# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2007AP221 & 2007AP1440 |
| COMPLETE TITLE: | |

Bostco LLC and Parisian, Inc.,
             Plaintiffs-Appellants-Cross-
Respondents-Petitioners,
        v.
Milwaukee Metropolitan Sewerage District,
             Defendant-Respondent-Cross-Appellant-
Petitioner.

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 334 Wis. 2d 620, 800 N.W.2d 518
(Ct. App. 2011 - Published)
PDC No: 2011 WI App 76

| | |
|---|---|
| OPINION FILED: | July 18, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 6, 2012 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jean A. DiMotto & Jeffrey A. Kremers |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | GABLEMAN, J., concurs. (Opinion filed.) |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | PROSSER, J., did not participate. |

ATTORNEYS:

For the plaintiffs-appellants-cross-respondents-petitioners, there were briefs by *Mark A. Cameli, Rebecca Frihart Kennedy, Lisa Nester Kass, Amy MacArdy,* and *Reinhart, Boerner Van Deuren, S.C.*, Milwaukee, and oral argument by *Mark A. Cameli* and *Rebecca Frihart Kennedy.*

For the defendant-respondent-cross-appellant-petitioner, there were briefs by *G. Michael Halfenger, William J. Katt, Jr., Eric G. Pearson,* and *Foley & Lardner, LLP*, Milwaukee, and *Susan B. Anthony, James H. Petersen* and *Milwaukee Metropolitan*

*Sewerage District*, Milwaukee, and oral argument by *G. Michael Halfenger*.

An amicus curiae brief was filed by *Claire Silverman*, Madison, on behalf of the League of Wisconsin Municipalities.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2007AP221 & 2007AP1440
(L.C. No. 2003CV5040)

STATE OF WISCONSIN      :      IN SUPREME COURT

**Bostco LLC and Parisian, Inc.,**

     **Plaintiffs-Appellants-Cross-Respondents-Petitioners,**

     **v.**

**Milwaukee Metropolitan Sewerage District,**

     **Defendant-Respondent-Cross-Appellant-Petitioner.**

**FILED**

**JUL 18, 2013**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part, and remanded.*

¶1 PATIENCE DRAKE ROGGENSACK, J. This is a review of a published opinion of the court of appeals[1] that affirmed in part and reversed in part the decision of the circuit court for Milwaukee County.[2] The questions now before us arise from claims by Bostco LLC and Parisian, Inc. (hereinafter Bostco), alleging

---

[1] Bostco LLC v. Milwaukee Metro. Sewerage Dist. (Bostco), 2011 WI App 76, 334 Wis. 2d 620, 800 N.W.2d 518.

[2] Judges Jeffrey A. Kremers and Jean A. DiMotto presided at different phases in the circuit court.

that Milwaukee Metropolitan Sewerage District's (MMSD) negligent operation and maintenance of a sewerage tunnel (the Deep Tunnel) beneath Bostco's property resulted in excessive groundwater seepage into the Deep Tunnel, thereby causing significant damage to Bostco's buildings. Bostco sought money damages, as well as equitable relief.

¶2 The parties raise five issues, and we affirm the court of appeals on all but one of the issues. First, MMSD claims in its cross-appeal that it is entitled to immunity for its construction and maintenance of the Deep Tunnel, under Wis. Stat. § 893.80(4).[3] Second, if immunity is not accorded, Bostco claims that the court of appeals erred when it reversed the circuit court's award of equitable relief for Bostco, ordering MMSD to abate the excessive seepage of groundwater into the Deep Tunnel. Third, Bostco claims that the damage cap in § 893.80(3), which caps the damages recoverable in an action against governmental entities at $50,000, violates equal protection, both facially and as applied to Bostco's specific claims. Additionally, Bostco contends that the damage cap does not apply to continuing nuisances. Fourth, Bostco claims that MMSD's operation and maintenance of the Deep Tunnel constituted an unconstitutional taking of the groundwater beneath Bostco's property. Fifth, MMSD argues that Bostco's claim is barred by the notice of claim provision of § 893.80(1) (2005-06).

---

[3] All references to the Wisconsin Statutes are to the 2011-12 version unless otherwise noted. Although the parties refer to the 2005-06 version, the relevant language remains the same in the current version unless otherwise indicated.

¶3 First, we conclude that MMSD is not entitled to immunity. Once MMSD had notice that the private nuisance it negligently maintained was causing significant harm, immunity under Wis. Stat. § 893.80(4) was not available for MMSD. The proper immunity analysis in this case rests on our holding in Milwaukee Metropolitan Sewerage District v. City of Milwaukee (City of Milwaukee), 2005 WI 8, 277 Wis. 2d 635, ¶59, 691 N.W.2d 658, that "[w]hether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts." Where the negligent act was undertaken pursuant to one of those functions set forth in § 893.80(4)——that is, legislative, quasi-legislative, judicial or quasi-judicial functions——immunity may apply. See id.; see also § 893.80(4).

¶4 Here, Bostco's nuisance claim is grounded in MMSD's negligent maintenance of its Deep Tunnel, which maintenance constituted a continuing private nuisance. See Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co., 2002 WI 80, ¶¶2-3, 254 Wis. 2d 77, 646 N.W.2d 777 (explaining that when all the elements of nuisance are proved and the municipal entity has notice that the nuisance was causing significant harm, the entity has a duty to abate). Because MMSD's maintenance of the continuing private nuisance is not a legislative, quasi-legislative, judicial or quasi-judicial function, MMSD is not entitled to immunity. See Hillcrest Golf & Country Club v. City of Altoona, 135 Wis. 2d 431, 439-40, 400 N.W.2d 493 (Ct. App. 1986) (explaining that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject

3

to protection under sec. 893.80(4)"); see also Welch v. City of Appleton, 2003 WI App 133, ¶8, 265 Wis. 2d 688, 666 N.W.2d 511 (explaining that "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance"); Menick v. City of Menasha, 200 Wis. 2d 737, 745, 547 N.W.2d 778 (Ct. App. 1996) (concluding "there is no discretion as to maintaining the [sewer] system so as not to cause injury"); Wis. Stat. §§ 844.01(1) and 844.20(2) (providing statutory procedure for seeking abatement of private nuisances).[4]  The court of appeals' determination that MMSD is not entitled to immunity is therefore affirmed.

¶5  Because MMSD does not have immunity for its negligent maintenance of the Deep Tunnel, we also conclude as follows:  On the second issue, we conclude that Wis. Stat. § 893.80(3)–(5) do not abrogate MMSD's duty to abate the private nuisance that MMSD caused by its negligent maintenance of the Deep Tunnel, after MMSD had notice that the nuisance was a cause of significant harm.  Therefore, we reverse the court of appeals' denial of the equitable relief of abatement.

¶6  Third, we conclude that the monetary damage cap in Wis. Stat. § 893.80(3) does not violate equal protection, either facially or as applied to Bostco.  Moreover, the nature of Bostco's claim as a continuing nuisance does not render § 893.80(3)'s monetary damage cap inapplicable.  Accordingly, we

_____

[4] See also Winchell v. City of Waukesha, 110 Wis. 101, 109, 85 N.W. 668 (1901) (concluding that the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance").

affirm the court of appeals' conclusion that the circuit court properly reduced Bostco's monetary damages to $100,000.

¶7 Fourth, with regard to Bostco's inverse condemnation claim, we conclude that Bostco forfeited the argument that it makes before this court, and we therefore affirm the court of appeals on this issue.

¶8 Fifth, we conclude that Bostco substantially complied with the notice of claim provisions under Wis. Stat. § 893.80(1) (2005-06), and that MMSD therefore had sufficient notice under those provisions. Accordingly, we affirm the court of appeals on that issue as well.

¶9 Because neither Wis. Stat. § 893.80(4) nor (3) abrogates MMSD's duty to abate this private nuisance, we reverse the court of appeals' decision in part, affirm that decision in part, and remand to the circuit court for further proceedings consistent with this opinion. In particular, we reverse the court of appeals' reversal of the circuit court's order for abatement, in part. That is, while we affirm the court of appeals on all other issues, we reverse that court's decision that Bostco was not entitled to equitable relief in the form of an order for abatement. Therefore, we affirm the circuit court decision that abatement is required, and we remand this matter to the circuit court. Upon remand, a hearing may be held to establish whether an alternate method will abate the continuing private nuisance MMSD maintains or whether lining the Deep Tunnel with concrete is required for abatement.

I. BACKGROUND

¶10 This case arises out of MMSD's maintenance of the Milwaukee Deep Tunnel, which was constructed in the early 1990s to collect and store both storm water runoff and sewage until the Deep Tunnel's collections could be transported to Milwaukee's sewage treatment plant.

¶11 Boston Store is located in downtown Milwaukee, one block west of the Deep Tunnel's North Shore segment. First erected in the 19th century, Boston Store consists of five interconnected buildings that rest upon wood pile foundations that were driven into the ground to support the buildings' columns. At the time of construction, the pilings were below the water table and were fully saturated, thereby preventing their deterioration.

¶12 Over time, however, the water enclosing the pilings was drawn down, and the Boston Store buildings began to suffer substantial structural damage. On November 16, 2004, Bostco filed the amended complaint in this case, alleging that MMSD's operation and maintenance of the Deep Tunnel caused the drawdown of the water that led to the deterioration of the wood pilings underlying Bostco's buildings. Bostco's claims for relief were based on theories of common law negligence, continuing private nuisance, inverse condemnation and violations of Wis. Stat. § 101.111, setting forth safety standards for excavation projects. Bostco sought equitable relief to abate the nuisance, as well as damages and expenses.

¶13 The amended complaint gave rise to numerous motions that resulted in dismissals of some of Bostco's claims.

6

Eventually two common law claims were tried to a jury: negligence and private nuisance.

¶14 The jury found that MMSD was negligent in its maintenance of the Deep Tunnel near Bostco's building,[5] and that MMSD's negligence was a cause of Bostco's injury.[6] The jury awarded Bostco $3,000,000 for past damages and $6,000,000 for future damages.[7] The jury also found that Bostco was at fault for 30 percent of the damages, thereby reducing the $9,000,000 award to $6.3 million.[8]

¶15 In regard to Bostco's nuisance claim, the jury found that the negligent manner in which MMSD maintained the Deep Tunnel interfered with Bostco's use and enjoyment of its property.[9] The jury found that MMSD could abate the interference

---

[5] QUESTION No. 1: "[W]as the District negligent in the manner in which it operated or maintained the tunnel near the Boston Store?"

ANSWER: "Yes."

[6] QUESTION No. 2: "Was such negligence a cause of the claimed damage to the Boston Store foundation?"

ANSWER: "Yes."

[7] See Special Verdict Questions Nos. 7 & 8.

[8] See Special Verdict Question No. 5.

[9] QUESTION No. 9: "Has the manner in which the District has operated or maintained the tunnel interfered with the Boston Store's use and enjoyment of their building?"

ANSWER: "Yes."

7

by reasonable means and at a reasonable cost.[10] However, the jury also found that the interference did not result in "significant harm" to Bostco.[11]

¶16 On post-verdict motions,[12] the circuit court denied Bostco's motion asking the court to find that over $2 million in damages constituted "significant harm" for purposes of Bostco's nuisance claim. Additionally, MMSD sought judgment notwithstanding the verdict, on the ground that MMSD was protected by governmental immunity. The circuit court denied MMSD's motion; however, the court agreed with MMSD that the $50,000 damages cap in Wis. Stat. § 893.80(3) applied, and reduced the jury's negligence verdict from $6.3 million to $100,000 ($50,000 each for Bostco and Parisian). After the damage cap had been applied, Bostco reasserted its claim for equitable relief, which the circuit court had held in abeyance pending the determination of damages in the jury trial. Specifically, Bostco claimed that a $100,000 damage award on $6.3 million of damages constituted an inadequate remedy at law. The circuit court granted Bostco's prayer for equitable relief

---

[10] See Special Verdict Question No. 11. Bostco's experts testified that the siphoning of water from near Bostco's building could be abated either by lining the Deep Tunnel with concrete or by installing and maintaining a system of groundwater monitoring and recharge wells to replenish the groundwater that is siphoned into the Deep Tunnel.

[11] See Special Verdict Question No. 10.

[12] The Honorable Jeffrey Kremers, Milwaukee County Circuit Court, presided at the trial and initial post-verdict phase of the proceedings.

and ordered MMSD to abate the nuisance caused by MMSD's maintenance of the Deep Tunnel.[13]

¶17 Bostco appealed and MMSD cross-appealed. Bostco argued that the circuit court erred when it refused to change the jury's finding that Bostco did not suffer "significant harm" as to its nuisance claim, as well as the court's summary judgment dismissing Bostco's inverse condemnation claim. On cross-appeal, MMSD argued that the circuit court erred (1) by failing to hold that MMSD's operation and maintenance of the Deep Tunnel were shielded by governmental immunity, (2) by granting Bostco's request for abatement, and (3) by not dismissing Bostco's complaint for failing to comply with the notice of claim provisions of Wis. Stat. § 893.80(1) (2005-06).[14]

¶18 With regard to Bostco's nuisance claim, the court of appeals concluded that the circuit court erred in declining to reverse the jury's finding that Bostco did not suffer "significant harm," and that, as a matter of law, suffering more than $2 million in past damages constituted significant harm. Therefore, the court concluded, Bostco proved its claim for private nuisance. Bostco LLC v. Milwaukee Metro. Sewerage Dist. (Bostco), 2011 WI App 76, ¶¶92-104, 334 Wis. 2d 620, 800 N.W.2d 518. Additionally, although the court of appeals concluded that

---

[13] The Honorable Jean DiMotto, Milwaukee County Circuit Court, presided over Bostco's claim for equitable relief.

[14] When discussing the parties' notice of claim arguments, we refer to the numbering of the provisions as they existed in the 2005-06 version of the Wisconsin Statutes, because the numbering of the relevant provisions of the statute has since changed.

MMSD was not entitled to immunity under Wis. Stat. § 893.80(4), the court reversed the circuit court's order for abatement, because it concluded that, since § 893.80(3) capped Bostco's recoverable damages at $50,000 per claimant, § 893.80(3) and (5) precluded such equitable relief. Id., ¶¶105-07, 123-37. Also, the court concluded that the damage cap under § 893.80(3) did not violate equal protection, either on its face or as applied to Bostco, id., ¶¶39-60, and that the cap applied to Bostco's continuing nuisance claim, id., ¶107.

¶19 The court of appeals also affirmed the circuit court's summary judgment dismissing Bostco's inverse condemnation claim, holding that Bostco had failed to allege facts that could show that MMSD either physically occupied Bostco's property or that MMSD deprived Bostco of all or substantially all of the beneficial use of its property.[15] Id., ¶¶110-13. Additionally, the court of appeals rejected MMSD's claim that Bostco had failed to comply with the notice of claim provision under Wis. Stat. § 893.80(1) (2005-06), and deemed that Bostco's notice was sufficient. Id., ¶¶85-91.

¶20 Bostco petitioned for review, and MMSD cross-petitioned for review. We granted both petitions.

## II. DISCUSSION

### A. Standard of Review

---

[15] The court of appeals also affirmed the circuit court's decision to dismiss Bostco's excavation protection claim on summary judgment. Bostco, 334 Wis. 2d 620, ¶122. That claim is not before us.

10

¶21 Whether MMSD is immune from a claim for abatement of the private nuisance it negligently maintained, which was a cause of significant harm and of which it had notice, when MMSD could do so by reasonable means at a reasonable cost, is a question of law for our independent review. See City of Milwaukee, 277 Wis. 2d 635, ¶56.

¶22 This case also requires us to interpret and apply Wis. Stat. § 893.80. Statutory interpretation and application present questions of law that we review independently, while benefitting from previous discussions of the court of appeals and the circuit court. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581. With regard to the circuit court's decision to grant equitable relief and order abatement, we review that decision for an erroneous exercise of discretion. Forest Cnty. v. Goode, 215 Wis. 2d 218, 225, 572 N.W.2d 131 (Ct. App. 1997).

¶23 Additionally, Bostco asks this court to review the circuit court's summary judgment of dismissal of its inverse condemnation/takings claim. Rather than applying the traditional summary judgment methodology, however, we decline to review that claim because the alleged taking as presented to us is materially different than the taking alleged in the circuit court action. See Vill. of Trempealeau v. Mikrut, 2004 WI 79, ¶15, 273 Wis. 2d 76, 681 N.W.2d 190. Accordingly, we conclude that Bostco has forfeited its new claim, and we therefore affirm the court of appeals on this issue.

11

¶24 Bostco also claims that the application of the statutory damages cap under Wis. Stat. § 893.80(3) violates the equal protection clause of the Wisconsin Constitution. Whether a statute's limitation violates equal protection presents a question of law for our independent review. See State v. West, 2011 WI 83, ¶22, 336 Wis. 2d 578, 800 N.W.2d 929.

B. Discussion's Structure

¶25 Two competing concepts underlie this controversy: one appurtenant to abating private nuisances and the other appurtenant to statutory immunity. One concept requires an understanding of the scope of the duty to abate a private nuisance that a municipal entity negligently maintained, which is a cause of significant harm, and of which the municipal entity had notice.[16] The other concept requires consideration of whether a municipal entity, here MMSD, has statutory immunity pursuant to Wis. Stat. § 893.80, from a claim for abatement based on the entity's negligent maintenance of a private nuisance. These two concepts are intertwined in the matter now before us.

¶26 In order to address these competing contentions, it is necessary to fully understand the claim that Bostco proved, i.e., that MMSD negligently maintained a continuing private nuisance that was a cause of significant harm and of which MMSD

---

[16] Our conclusion on the question of negligence is based on the jury's findings. Our analysis is confined to whether, upon a finding of negligence, an injured party may seek abatement of a private nuisance that continues to be a cause of significant harm when the municipal entity has notice of such nuisance.

12

had notice. Given this posture, our task is to apply the law that bears on the obligation to abate a nuisance, as it has existed for more than 100 years. We interpret the governmental immunity provisions of Wis. Stat. § 893.80 in light of the common law duty to abate negligently maintained private nuisances and statutory provisions such as Wis. Stat. § 844.01 and Wis. Stat. § 844.17 that specifically speak to abatement of private nuisances.

¶27 After addressing those issues, we briefly address the remaining issues. These include (1) Bostco's claim that Wis. Stat. § 893.80(3)'s damage cap violates equal protection; (2) Bostco's inverse condemnation claim; and (3) MMSD's challenge to Bostco's notice of claim under § 893.80(1) (2005-06).

## C. Nuisance

### 1. General principles

¶28 The tort of nuisance is grounded in a condition or activity that unduly interferes with a public right or with the use and enjoyment of private property. Physicians Plus, 254 Wis. 2d 77, ¶21 n.14. There are two broad categories of nuisance that derive their distinctions from the types of rights or interests invaded. City of Milwaukee, 277 Wis. 2d 635, ¶24. These broad tort categories are known as public nuisance and private nuisance. Restatement (Second) of Torts, Introductory Note to §§ 821-49 (1979); see also Wis. Stat. ch. 844. It is the type of harm suffered or interest invaded that determines whether the nuisance is a public or a private nuisance. City of Milwaukee, 277 Wis. 2d 635, ¶26.

13

¶29 A public nuisance involves the impingement of public rights, rights that are common to all members of the public. Id., ¶28. In order to recover for a public nuisance, an individual must have suffered harm of a kind different from other members of the public who exercised that common right. Restatement (Second) of Torts, § 821C.

¶30 A private nuisance is a condition that harms or interferes with a private interest. Id., § 821A. We have accepted the Restatement (Second) of Torts' characterization of private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." City of Milwaukee, 277 Wis. 2d 635, ¶25 n.4 (citing Vogel v. Grant-Lafayette Elec. Coop., 201 Wis. 2d 416, 423, 548 N.W.2d 829 (1996) and Prah v. Maretti, 108 Wis. 2d 223, 231, 321 N.W.2d 182 (1982)); see Restatement (Second) of Torts, § 821D. There is no dispute that the nuisance at issue in this case is a private nuisance.

¶31 Wisconsin law employs the following directive for those seeking to establish liability for a private nuisance:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) [I]ntentional and unreasonable, or
>
> (b) [U]nintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts, § 822; City of Milwaukee, 277 Wis. 2d 635, ¶32. Because a nuisance is a result, of which

14

negligence or intentional conduct may be the cause, liability for a nuisance "is founded on the wrongful act in . . . maintaining [the nuisance]." Physicians Plus, 254 Wis. 2d 77, ¶27 (quoting Brown v. Milwaukee Terminal Ry. Co., 199 Wis. 575, 589, 227 N.W. 385 (1929) (internal quotation marks omitted). Physical occupation of the property of another is not necessary to a nuisance claim. Vogel, 201 Wis. 2d at 426. For example, invasions of noxious odors can rise to the level of a nuisance. Costas v. City of Fond du Lac, 24 Wis. 2d 409, 413, 129 N.W.2d 217 (1964).

¶32 Liability for a private nuisance may be based on either intentional[17] or negligent acts. City of Milwaukee, 277 Wis. 2d 635, ¶33. In the case of negligence, as here, liability may be predicated on a party's failure to act when he has a duty to do so. See id., ¶34. The duty to act to abate a nuisance arises when one has notice that he is maintaining a nuisance that is a cause of significant harm. See id., ¶35.

> [Some] cases involve changes to otherwise benign objects that develop over time and become harmful, through no fault of the owner of the object. In these cases, liability is predicated upon the defendant's failure to remove the harmful condition after he has notice of its existence.

Id. (citation omitted).

¶33 Furthermore, the duty to abate a nuisance negligently maintained, of which one has notice, is a general common law

---

[17] An intentional interference with another's private use and enjoyment of property requires that the tortfeasor "must either act for the purpose of causing [the interference] or know that it is resulting or is substantially certain to result from his conduct." Restatement (Second) of Torts § 825.

15

obligation to which all persons may be subject. See id. at ¶¶48, 51; see also Restatement (Second) of Torts §§ 821D, 824; see also Wis JI—Civil 1922. Moreover, although a municipal entity has a duty to abate a known, private nuisance by one of any number of methods within the entity's discretion, such "discretion" in selecting the particular method by which to abate a nuisance does not eliminate the duty to abate, or make that duty, itself, discretionary. Costas, 24 Wis. 2d at 418 (concluding that "[g]enerally the means whereby [a] nuisance is to be abated is left to the direction of the defendant tort-feasor").

¶34 In Physicians Plus, we fully explored the duty of municipal entities to abate a nuisance caused by negligent maintenance. There, a tree had grown to the extent that it obscured a stop sign at a highway intersection, and that untrimmed growth was alleged to have caused a significant automobile accident. Physicians Plus, 254 Wis. 2d 77, ¶1. We explained that because the municipal entities responsible for trimming the tree had at least constructive notice of the sign blockage, they had a duty to abate the nuisance. Id., ¶¶2-3. This duty arises from the longstanding rule that generally municipal entities are not shielded from liability for maintaining a private nuisance. See Welch, 265 Wis. 2d 688, ¶8.

¶35 Similarly, in Costas, we addressed a nuisance that arose out of the operation of a sewage system operated by a

16

municipal entity, the City of Fond du Lac.[18]  The City argued

that no nuisance claim could lie because the sewage plant was

built and operated according to the plan approved by a state

agency.  Costas, 24 Wis. 2d at 415 (citing Hasslinger v. Vill.

of Hartland, 234 Wis. 201, 290 N.W. 647 (1940), as support for

---

[18] Previously, in Winchell, 110 Wis. at 103-05, we
recognized a municipal entity's obligation to abate a private
nuisance that the entity caused.  Winchell dealt with an action
against the City of Waukesha, to abate and enjoin a nuisance
resulting from the City's emptying its sewage into the Fox
River, which ran along the side of Winchell's property.  Id. at
103.  We concluded that the collection and disposal of sewage is
for the public safety, but that the "authority granted to
municipalities . . . to construct sewers, [is] subject to the
general legal restrictions resting upon such corporations
forbidding invasion of private rights by creation of nuisance or
otherwise."  Id. at 109.  In concluding that the City was
required to abate the nuisance it had created, we reasoned:

> The great weight of authority, American and English,
> supports the view that legislative authority to
> install a sewer system carries no implication of
> authority to create or maintain a nuisance, and that
> it matters not whether such nuisance results from
> negligence or from the plan adopted.  If such nuisance
> be created, the same remedies may be invoked as if the
> perpetrator were an individual.

Id.  We acknowledge that, following Holytz, Winchell's statement
that "it matters not whether such nuisance results from . . .
the plan adopted" has been abrogated by Wis. Stat. § 893.80(4),
which immunizes such legislative functions as adopting a plan.
This limited abrogation, however, has no bearing on Winchell's
still valid conclusion that a governmental entity's negligent
maintenance of a system or structure, which results in a
nuisance of which the entity has notice, may give rise to a
claim against the entity to abate that nuisance.  It has never
been the law that a governmental entity, by virtue of its
governmental status alone, may perpetuate an injurious condition
of which the entity has knowledge.  Our decision reaffirms that
longstanding limitation on the power of government to
continuously and knowingly invade the rights of its citizens.

this argument). We concluded that the language in Hasslinger, upon which the City relied, was "misleading," and we overruled Hasslinger to the extent that it implied "that operation of the sewage-disposal plant in accordance with specifications and orders and regulations of the state board of health cannot constitute a nuisance." Id. We explained further that "[t]he approval of the method of operation of the sewage-disposal plant is pertinent not to the existence of the nuisance but to the issue of whether it is feasible or practicable to give injunctional [sic] relief for the nuisance." Id. at 416. This principle has been applied in multiple cases before this court and the court of appeals, discussed below. In the case now before us, Bostco has proved that the private nuisance can be abated by reasonable means and at a reasonable cost.[19]

¶36 In Menick, the plaintiff claimed that the operation of a sewage system resulted in the flooding of the plaintiff's basement with raw sewage on two occasions, constituting a private nuisance. Menick, 200 Wis. 2d at 741. As we do here, Menick focused on the duty that pertains to a municipal entity's nuisance-causing actions, which is the duty to abate the nuisance upon notice that the negligently caused condition is a cause of significant harm. The court of appeals concluded that although Menick had failed in her proof of her nuisance claim because she did not offer an expert opinion as to the legal cause of the flooding, the City would not have enjoyed immunity from such an action based on private nuisance. Id. at 744-45.

---

[19] See Special Verdict Question No. 11.

18

¶37 Factually similar to Menick is the Welch case, in which Welch claimed that flooding that occurred after heavy rainfalls constituted a private nuisance, attributable to the City of Appleton's maintenance of its storm sewer system. Welch, 265 Wis. 2d 688, ¶1. The City asserted that it was immune from suit pursuant to Wis. Stat. § 893.80(4). Id., ¶5. The court of appeals concluded that, as a matter of law, "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance."[20] Id., ¶8.

¶38 The most recent nuisance case is City of Milwaukee, which we decided in 2005. In City of Milwaukee, we reviewed the legal issues surrounding a broken city water main that damaged a section of MMSD's Deep Tunnel. City of Milwaukee, 277 Wis. 2d 635, ¶2. There, MMSD alleged both negligence and nuisance, just as Bostco has alleged here, asserting that the City did not properly inspect or maintain its pipeline so as to discover the leakage before the pipeline ruptured. Id., ¶3.

¶39 After a full discussion of the law relating to nuisance, we concluded that there was a question of fact as to whether the City had notice that its water main was leaking, and that such notice was necessary to show that the City was under a ministerial duty to abate the nuisance by repairing the water pipe before it broke. Id., ¶9. We explained:

---

[20] Ultimately, the court in Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, concluded that the City's maintenance of its storm sewer was not a private nuisance. Id., ¶8.

19

[T]he City may be liable for its negligence in failing to repair the leaky water main. However, since there exists a material issue of fact as to whether the City had notice of the leaking water main, we cannot determine whether the City was under a ministerial duty to repair its water main prior to the break. Thus, we cannot determine whether the City is immune under § 893.80(4) from liability predicated upon a negligent failure to repair the water main before it burst.

Id.

¶40 A careful reading of City of Milwaukee is important to deciding this case because our decision in City of Milwaukee is grounded in a nuisance claim and also because it explains how the duty to abate a nuisance intersects with the concept of a ministerial duty of a municipal entity. We explained,

Since we cannot determine whether the City was on notice that its water main was leaking and could potentially interfere with the use and enjoyment of another's property, we cannot conclude whether its duty to repair the leaking main with reasonable care before it broke was "absolute, certain and imperative," or whether the City's decision not to repair the main before the break was discretionary.

Id., ¶62 (citation omitted).

¶41 It follows from our explanation in paragraph 62 of City of Milwaukee, quoted above, that if the City had notice that its water main was leaking before it broke, it had a duty

20

to abate the nuisance by fixing the pipe.[21] The <u>duty to fix the pipe</u>, if the City knew it was leaking, was "absolute, certain and imperative"——in other words, ministerial——even though a <u>particular method</u> of repairing the leak was not "absolute, certain and imperative."[22] This conclusion is supported by

---

[21] In <u>Anhalt v. Cities & Villages Mutual Insurance Co.</u>, 2001 WI App 271, 249 Wis. 2d 62, 72, 637 N.W.2d 422, the court of appeals relied on our statement in <u>Allstate Insurance Co. v. Metropolitan Sewerage Commission of the County of Milwaukee</u>, 80 Wis. 2d 10, 258 N.W.2d 148 (1977), that "the acts of designing, planning and implementing a sewer system are discretionary acts protected under Wis. Stat. § 893.80(4)." This statement comports with our decision today, in that we do not upset the rule that acts of designing, planning, and implementing are legislative or quasi-legislative acts subject to immunity under § 893.80(4). Such acts, however, are distinguishable from the act of negligently maintaining an existing system or structure so as to cause a continuing nuisance, and longstanding law demonstrates that the act of maintaining an existing system or structure is not a legislative or quasi-legislative function. <u>See, e.g.</u>, <u>Naker v. Town of Trenton</u>, 62 Wis. 2d 654, 215 N.W.2d 38, <u>aff'd on reh'g</u>, 62 Wis. 2d 654, 660a, 217 N.W.2d 665 (1974) ("Once the decision is made and the [system or structure] is erected, the legislative function is terminated and the doctrine of <u>Holytz</u> that imposes liability for want of ordinary care takes over."). Neither <u>Allstate</u> nor <u>Anhalt</u> decided the question of negligent maintenance that we reach today. Rather, we conclusively resolved that question in <u>Milwaukee Metropolitan Sewerage District v. City of Milwaukee (City of Milwaukee)</u>, 2005 WI 8, ¶59 277 Wis. 2d 635, 691 N.W.2d 658, in which we recognized that a governmental entity is not entitled to immunity for a negligent act when such act is not performed pursuant to a legislative, quasi-legislative, judicial or quasi-judicial function. Indeed, our decision in <u>City of Milwaukee</u> on that point was intended to clarify any "confusion" created by unclear statements in cases such as <u>Anhalt</u>. <u>See</u> <u>City of Milwaukee</u>, 277 Wis. 2d 635, ¶59 n.17.

[22] For example, the City could have removed the precise area of pipe that was leaking; it could have sealed the leaky pipe and left it in place, etc. The choice of method for abating the nuisance, like the decision to initially install a particular system, was within the City's discretion. <u>Costas v. City of Fond du Lac</u>, 24 Wis. 2d 409, 418, 129 N.W.2d 217 (1964).

21

Physicians Plus, where we explained that a negligently caused nuisance resulting in significant harm, of which the municipal entity has notice, creates a ministerial duty to abate the nuisance. See Physicians Plus, 254 Wis. 2d 77, ¶59 (reaffirming municipal entity's ministerial duty to properly maintain structures installed pursuant to municipal entity's legislative authority).

### 2. MMSD's nuisance

¶42 In this case, Bostco proved that MMSD negligently caused a continuing private nuisance due to the manner in which MMSD chose to maintain the Deep Tunnel.[23] MMSD had notice that excessively siphoning groundwater from around Bostco's building was interfering with Bostco's use and enjoyment of its property by damaging the foundation of the building.

¶43 Here, in contrast to the City of Milwaukee case, no further fact-finding is required before concluding that MMSD is under a duty to abate. MMSD knew that excessive siphoning of water into the Deep Tunnel was a cause of significant harm to Bostco's building, and MMSD could have abated the nuisance, i.e., stopped the excessive siphoning, by reasonable means and at a reasonable cost.[24] Accordingly, the circuit court properly

---

[23] See Sunnyside Feed Co. v. City of Portage, 222 Wis. 2d 461, 470, 588 N.W.2d 278 (Ct. App. 1998) (defining a continuing nuisance as "an ongoing or repeated disturbance or harm" that "can be discontinued or abated").

[24] This is a fact question that was resolved by the jury. Question No. 11 of the Special Verdict asked: "Can the District abate the interference by reasonable means and at a reasonable cost so that it no longer interferes with Boston Store's use and enjoyment of their building?" The jury answered this question, "Yes."

22

concluded that MMSD was required to abate the private nuisance caused by MMSD's negligent maintenance of the Deep Tunnel.[25]

## D. Municipal Immunity

¶44 In the context of municipal entities, the obligation to abate a known private nuisance is additionally subject to the principles of immunity for governmental entities. We therefore turn to interpreting those statutes relevant to an immunity analysis: Wis. Stat. § 893.80(4) and (3).

¶45 Statutory interpretation requires us to determine the statute's meaning, which is assumed to be expressed in the language chosen by the legislature. Richards, 309 Wis. 2d 541, ¶20. If the meaning of the statute is apparent in the plain language, we apply that language. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. We give statutory terms their "common,

---

[25] As discussed above, in accordance with our decision in City of Milwaukee, once a governmental entity has notice that its negligent maintenance of a system or structure is causing damage, it is the manner in which MMSD complies with the ministerial duty to fix the problem that is subject to discretion; no such discretion exists as to whether MMSD must fix the known problem. Cf. Rolland v. Cnty. of Milwaukee, 2001 WI App 53, ¶12, 241 Wis. 2d 215, 625 N.W.2d 590 (explaining that the driver of a bus had a ministerial duty not to drive the bus with a wheelchair passenger aboard unless the passenger was secured, even though the method of securing the wheelchair was discretionary). This conclusion comports with our statement in City of Milwaukee, 277 Wis. 2d 635, ¶8, that a governmental entity "is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature." Because negligent maintenance of an existing system or structure is not a "legislative, quasi-legislative, judicial or quasi-judicial function," i.e., is not discretionary, no immunity attaches to the entity's negligent maintenance.

23

ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.

¶46 A plain meaning analysis may be assisted by consideration of statutory context and structure. See id., ¶46. "[T]he statutory context in which a term is used, including the language and structure of surrounding or closely related statutes, is often highly instructive in determining a term's meaning." State v. Soto, 2012 WI 93, ¶20, 343 Wis. 2d 43, 817 N.W.2d 848 (citing State v. Jensen, 2010 WI 38, ¶15, 324 Wis. 2d 586, 782 N.W.2d 415). The purpose of the legislation also may be useful in ascertaining a statute's meaning. Sheboygan Cnty. Dep't of Health & Human Servs. v. Tanya M.B., 2010 WI 55, ¶28, 325 Wis. 2d 524, 785 N.W.2d 369. Furthermore, we are assisted by prior decisions that have examined similar statutory questions. See DeHart v. Wis. Mut. Ins. Co., 2007 WI 91, ¶15, 302 Wis. 2d 564, 734 N.W.2d 394. Finally, if the statute was a legislative attempt to follow the rule of law set forth in a particular supreme court decision, a review of that decision also informs our understanding of the statute.

¶47 In regard to the immunity question presented herein, initially we are concerned with Wis. Stat. § 893.80(4), which provides in relevant part:

> No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency . . . for acts done in the exercise of

24

legislative, quasi-legislative, judicial or quasi-judicial functions.

We begin by noting that § 893.80(4) was intended to codify our decision in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962). See Coffey v. City of Milwaukee, 74 Wis. 2d 526, 532, 247 N.W.2d 132 (1976) (recognizing that § 893.80(4)'s indirect predecessor, Wis. Stat. § 331.43 (1963), was intended to codify Holytz); see also Raisanen v. City of Milwaukee, 35 Wis. 2d 504, 515-16, 151 N.W.2d 129 (1967) (noting § 331.43's intermediate enumeration as Wis. Stat. § 895.43).

¶48 As the Legislative Council Report of 1976 also explains:

> Prior to 1961 local units of government in Wisconsin were generally immune from tort liability because of the judicial doctrine of governmental immunity. . . . In 1961 the case of Holytz v. Milwaukee (1961), 17 Wis. 2d 26, was decided which abrogated the principal of governmental immunity from tort liability. . . . The opinion did not impose liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions, and to that extent a part of the immunity doctrine remained intact. . . . The general statute concerning the liability of local governmental units for torts [then § 343.80, now § 893.80] was enacted shortly after this decision and in many respects draws from the decision for its content.

Therefore, our interpretation of Wis. Stat. § 893.80(4) is informed by a review of Holytz.

¶49 In Holytz, we explicitly abrogated common law immunity for municipal entities as it existed in 1962. See Holytz, 17 Wis. 2d at 39-41. The abrogation was intended to apply to municipal entity liability for all torts, "whether they be by

25

commission or omission."[26] Id. at 39. The one limitation on our broad abrogation was clearly stated: our decision was "not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions." Id. at 40. The second sentence of Wis. Stat. § 893.80(4) mirrors this limitation of municipal entity liability.[27]

¶50 The rule as to municipal entity liability has been repeated many times since our decision in Holytz and the enactment of Wis. Stat. § 893.80: as to non-state governmental entities, "'the rule is liability——the exception is immunity.'" Kimps v. Hill, 200 Wis. 2d 1, 10 n.6, 546 N.W.2d 151 (1996)

---

[26] The court's abrogation of immunity in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), was not limited to municipalities, and applied to public bodies within the state such as counties, cities, villages, towns, school districts, sewer districts, drainage districts, and any other political subdivisions of the state. Id. at 40. Therefore, although Holytz and subsequent discussions have referred to "municipal immunity," the phrase "governmental immunity" has been used interchangeably to apply to state officers, non-state governmental entities, and officers or employees of those entities.

[27] In Holytz, we also recognized that the State's sovereign immunity has its foundation in the Wisconsin Constitution, Article IV, Section 27, which provides that "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Accordingly, the effect of Holytz has been more relevant to suits against governmental entities other than the State, as well as to governmental officers and employees.

(quoting Holytz, 17 Wis. 2d at 39).[28] See, e.g., Jorgenson v. N. States Power Co., 60 Wis. 2d 29, 37, 208 N.W.2d 323 (1973) (concluding that a city's failure to authorize the temporary removal of a light pole so that it would not injure workers digging next to the pole's base did not constitute an exercise of a legislative or quasi-legislative function); Naker v. Town of Trenton, 62 Wis. 2d 654, 215 N.W.2d 38, aff'd on reh'g, 62 Wis. 2d 654, 660a, 217 N.W.2d 665 (1974) (concluding that a traffic sign, once erected, must be properly maintained or liability may follow).

¶51 Furthermore, although a municipal entity escapes liability for its legislative or quasi-legislative decision regarding whether to install a particular system or structure, once the municipal entity makes the decision to install, the

---

[28] In contrast to governmental entities, for governmental officers acting in their official capacity, we have stated that the rule is immunity, and the exception is liability. See Cords v. Anderson, 80 Wis. 2d 525, 539, 259 N.W.2d 672 (1977). This rule for governmental officers is based on public policy considerations that support limiting public officers' personal liability for damages, namely, "(1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public [office]." Lister v. Bd. of Regents of the Univ. of Wis. Sys., 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976).

entity is under a subsequent ministerial duty[29] to maintain the system or structure in a safe and working order. As we explained in Naker:

> Once the decision is made and the sign is erected, the legislative function is terminated and the doctrine of Holytz that imposes liability for want of ordinary care takes over. A sign once erected by legislative action must be properly maintained.

Naker, 62 Wis. 2d at 660a.

¶52 As discussed above, in City of Milwaukee, we explained the relationship between municipal immunity under Wis. Stat. § 893.80(4) and the duty to abate a private nuisance. We held that if the City of Milwaukee had a duty to repair the water pipe so that it did not rupture and damage MMSD's tunnel (which duty in turn was dependent upon the City having notice that the pipe was leaking), such duty was ministerial and there would be no immunity under § 893.80(4) for the City's failure to abate the nuisance its leaking pipe had created. City of Milwaukee, 277 Wis. 2d 635, ¶62. Therefore, in City of Milwaukee, if the City had notice of the leaking water pipe, the nuisance it was maintaining would require abatement as a non-discretionary, ministerial duty.

¶53 In the present case, the court of appeals, in reversing the circuit court's order for abatement, concluded that while Wis. Stat. § 893.80(4) does not provide immunity,

---

[29] The decision in Naker, 62 Wis. 2d at 660a, does not label the duty to "properly maintain" the sign the town erected as a "ministerial duty." However, the conclusion that it is a ministerial duty flows from the liability to which the municipality was subject.

28

§ 893.80(3) does not allow parties to obtain equitable relief against governmental entities because doing so would "render the damage cap set forth in Wis. Stat. § 893.80(3) superfluous." Bostco, 334 Wis. 2d 620, ¶129. The court of appeals concluded that because § 893.80(3) is silent about equitable relief, when read with § 893.80(5), § 893.80(3) precluded the circuit court's order enjoining MMSD from continuing to injure Bostco. Id., ¶¶130-31. To test the court of appeals decision, we turn to the language of § 893.80(3), and construe the statute according to its plain meaning.

¶54 Statutory interpretation begins with the words chosen by the legislature. Wisconsin Stat. § 893.80(3) provides in relevant part:

> Except as provided in this subsection, the <u>amount recoverable by any person for any damages, injuries or death</u> in any action founded on tort against any . . . governmental subdivision . . . shall not exceed $50,000.

(Emphasis added).

¶55 Wisconsin Stat. § 893.80(3) addresses "the amount recoverable by any person for any damages, injuries or death." The statute limits the "amount recoverable" "by any person" to $50,000. The words chosen by the legislature should be given their plain meaning. Kalal, 271 Wis. 2d 633, ¶45. An order for abatement does not entitle "any person" to "recover" any "amount." It is a foundational principle of statutory construction that "no word or clause shall be rendered surplusage." Donaldson v. State, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980). The court of appeals ignored the phrase,

29

"the amount recoverable by any person"; however, courts are not free to ignore the words or phrases chosen by the legislature. See Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶16, 325 Wis. 2d 135, 785 N.W.2d 302.

¶56 Also, non-technical words are to be given their ordinary and accepted meanings. Town of LaFayette v. City of Chippewa Falls, 70 Wis. 2d 610, 619, 235 N.W.2d 435 (1975). The phrase, "amount recoverable by any person," is stated in non-technical terminology. In order to give an ordinary and accepted meaning to those terms, we conclude that the statute describes a relationship. That relationship is between any person who is entitled to recover a damage award against a municipal entity and the amount of that monetary liability. Accordingly, we conclude that the plain meaning of Wis. Stat. § 893.80(3) is to limit the dollar amount of recovery to be paid for damages, injuries or death to $50,000 per claimant, but that the plain meaning of that provision has no bearing on the availability of equitable relief such as abatement.

¶57 This interpretation is consistent with prior cases interpreting Wis. Stat. § 893.80, such as Harkness v. Palmyra-Eagle School District, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990),[30] in which the court of appeals was asked to consider whether § 893.80(4) should be interpreted to preclude equitable

---

[30] Harkness v. Palmyra-Eagle School District, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990), was overruled by DNR v. City of Waukesha, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), to the extent that Harkness implied that § 893.80(1)'s notice of claim requirement applied only to tort claims.

relief. The court held that in regard to Harkness's claim for reinstatement, there was "no authority indicating that [§ 893.80(4)] applies to equitable or injunctive relief" for such a claim; accordingly, § 893.80(4) did not bar Harkness's claim for reinstatement. Id. at 579-80.

¶58 Our interpretation of Wis. Stat. § 893.80(3) is consistent with that statement in Harkness, and consistent with the statutory history that we laid out in Anderson v. City of Milwaukee, 208 Wis. 2d 18, 559 N.W.2d 563 (1997). In Anderson, Justice Crooks thoroughly explained the genesis of § 893.80(3), and quoted from our opinion in Holytz: "'[H]enceforward, so far as governmental responsibility for torts is concerned, the rule is liability——the exception is immunity.'" Id. at 26 (quoting Holytz, 17 Wis. 2d at 39). Anderson explained the changing dollar amounts that could be recovered as damages, showing that the bill from which § 893.80(3) evolved began with a $10,000 limitation, changed to a $25,000 limitation in a Senate Amendment, and increased to a $50,000 limitation by the Laws of 1981, ch. 63, § 2. Id. at 27 n.9. Throughout these changes, nothing in the legislative history addressed limitations on equitable relief of any type. Without any language in § 893.80(3) to suggest a limitation on equitable relief, we decline to read in any such limitation.

### E. Equitable Relief

¶59 In the case now before us, the court of appeals attempted to fill the legislature's silence in regard to equitable relief under Wis. Stat. § 893.80(3) by construing

31

§ 893.80(5) to create limitations in § 893.80(3) that were not placed there by the legislature. Bostco, 334 Wis. 2d 620, ¶130. The court of appeals said that the phrase "shall be exclusive" in § 893.80(5), limits a plaintiff's recovery to those remedies set forth in § 893.80 and because injunctions are not mentioned, they are not available against a municipality. Id. However, there is nothing in either the language or the history of § 893.80 to support the court of appeals' broad limitation of remedies and its conclusion that § 893.80(3) precludes actions in equity.[31] The court of appeals' decision, if affirmed, would have far-reaching effects and would overrule extensive precedent in regard to the authority of courts to enjoin municipal entities.[32]

¶60 To obtain injunctive relief, generally one must show that the injunction is necessary to prevent the continuation of significant harm. Pure Milk Prods. Coop. v. Nat'l Farmers Org.,

---

[31] The words injunction, enjoin, or similar terms that may indicate equitable relief are not present in the statute. Furthermore, reference to injunctive relief would be inconsistent with the purposes of the statute, such as providing a recovery for death.

[32] In addition, the court of appeals' limitation of remedies based on statutory silence contradicts our decision in Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, reconsid. denied 239 Wis. 2d 314, wherein we expressly affirmed the availability of declaratory relief, a nonmonetary remedy that, like equitable relief, is not mentioned in Wis. Stat. § 893.80(3). Id., ¶36 n.12. Moreover, the court of appeals' conclusion in the case before us is also contrary to Wis. Stat. § 813.02, which has been employed to issue temporary injunctions against municipalities. See Wis. Ass'n of Food Dealers v. City of Madison, 97 Wis. 2d 426, 428-29, 293 N.W.2d 540 (1980).

90 Wis. 2d 781, 803, 280 N.W.2d 691 (1979). "The purpose of an injunction is to prevent [future] violations." Id. In that respect, injunctive relief is consistent with the obligation to abate a continuing private nuisance, which obligation is imposed to prevent future harms. See, e.g., Menick, 200 Wis. 2d at 745 (concluding that "there is no discretion as to maintaining the [sewer] system so as not to cause injury to residents").

¶61 While the legislature may have authority to limit equitable relief in some circumstances, there is nothing in the language of Wis. Stat. § 893.80(3) to indicate that the legislature sought to do so. When a statute fails to address a particular situation, the remedy for the omission does not lie with the courts. It lies with the legislature. La Crosse Lutheran Hosp. v. La Crosse Cnty., 133 Wis. 2d 335, 338, 395 N.W.2d 612 (Ct. App. 1986).

¶62 Both before and after Holytz, when the principles of immunity have been applied to claims against municipal entities for damages, those principles have not been held applicable to claims for injunctive relief against ongoing governmental activities. Perhaps one of the clearest recognitions of this distinction was our statement in Lister v. Board of Regents of the University of Wisconsin System, 72 Wis. 2d 282, 240 N.W.2d 610 (1976). In Lister, we explained that the public policy considerations that have prompted courts to grant substantive immunity for monetary damages do not apply with equal force to actions for declaratory or injunctive relief. Id. at 304; see also Scarpaci v. Milwaukee Cnty., 96 Wis. 2d 663, 691, 292

33

N.W.2d 816 (1980) (reaffirming that policies that underlie immunity from damages do not apply with equal force to a suit for injunctive relief).

¶63 However, in <u>Johnson v. City of Edgerton</u>, 207 Wis. 2d 343, 558 N.W.2d 653 (Ct. App. 1996), the court of appeals seemed to slip away from precedent in regard to injunctive relief against municipal entities, without recognizing that it was making a significant change in the law. Accordingly, <u>Johnson</u> is a concern that must be addressed for a number of reasons. <u>See</u> <u>Willow Creek Ranch, L.L.C. v. Town of Shelby</u>, 2000 WI 56, ¶¶75–99, 235 Wis. 2d 409, 611 N.W.2d 693 (Prosser, J., dissenting). First, because the language in <u>Johnson</u> is so broad, it could be interpreted as overruling, sub-silentio, prior decisions of the court of appeals that addressed immunity under Wis. Stat. § 893.80(4), which were, in turn, based on the longstanding availability of equitable relief to abate ongoing nuisances. <u>See, e.g.</u>, <u>Hillcrest</u>, 135 Wis. 2d at 439-40 (explaining that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)"); <u>see also</u>, <u>Harkness</u>, 157 Wis. 2d 567, 579-80. The court of appeals does not have the power to overrule prior decisions. <u>See</u> <u>Cook v. Cook</u>, 208 Wis. 2d 166, 171, 560 N.W.2d 246 (1997) (concluding that the court of appeals does not have the power to overrule, modify or withdraw language from another court of appeals decision).

¶64 Second, the court of appeals' decision in <u>Johnson</u> (upon which we based part of our decision barring injunctive

34

relief in <u>Willow Creek</u>), focused on the wrong language in the municipal immunity statute, Wis. Stat. § 893.80(4), in that the court of appeals emphasized that immunity applied to "any suit." <u>See</u> <u>Johnson</u>, 207 Wis. 2d at 350-52. Instead, the relevant focus when considering whether § 893.80(4) grants immunity is on whether the action sought to be enjoined was within a limited class of municipal decisions that involve the performance of "legislative, quasi-legislative, judicial or quasi-judicial functions." As our cases and those of the court of appeals make clear, a municipal entity's failure to abate a continuing nuisance caused by negligent maintenance of a system or structure, after the municipality has notice, does not constitute a legislative, quasi-legislative, judicial or quasi-judicial act that may be entitled to immunity. <u>See, e.g.</u>, <u>Costas</u>, 24 Wis. 2d at 413-19; <u>Hillcrest Golf</u>, 135 Wis. 2d at 439-40.

¶65 Third, <u>Johnson</u> relied on the principles of immunity that apply to municipal <u>officers</u>. <u>Johnson</u>, 207 Wis. 2d at 352. However, for municipal officers, <u>the rule is immunity</u>, not liability. <u>See</u> <u>Cords v. Anderson</u>, 80 Wis. 2d 525, 539, 259 N.W.2d 672 (1977). The <u>Johnson</u> decision's reliance on those principles is misplaced because <u>Johnson</u> actually involved a municipal <u>entity</u>, and therefore, <u>the rule is liability</u>, not immunity. <u>Kimps</u>, 200 Wis. 2d at 10 n.6.

¶66 Furthermore, the <u>Johnson</u> decision's errors were uncorrected by our decision in <u>Willow Creek</u>. We did note that "[t]o the extent that the language in <u>Johnson</u> suggests other-

35

wise by expanding immunity too broadly, we limit that language." Willow Creek, 235 Wis. 2d 409, ¶34. We did not describe how the language in Johnson was limited.[33] However, we now clarify that under Willow Creek and Johnson, equitable relief will be barred when a municipal entity is entitled to immunity. Accordingly, our analysis in this case would be different if we concluded that MMSD were entitled to municipal entity immunity for legislative, quasi-legislative, judicial or quasi-judicial functions. Under circumstances when immunity applies, it bars claims for both monetary damages and injunctive relief. Id., ¶36. Therefore, when a plaintiff seeks equitable or injunctive relief against a municipal entity, a court must first answer the threshold question of whether immunity applies. If a court concludes that the actions the plaintiff is seeking to stop through a suit in equity are legislative, quasi-legislative, judicial or quasi-judicial, then the suit must be dismissed because the governmental entity is protected by immunity.

¶67 In addition, City of Milwaukee concluded that Wis. Stat. § 893.80(4) provides no immunity for a municipal entity's ministerial duty to abate. City of Milwaukee, 277 Wis. 2d 635, ¶¶9, 54. This conclusion is also supported by our discussion in Physicians Plus, where we addressed nuisance and the duty of municipal entities to abate a nuisance that the entities

---

[33] Moreover, Willow Creek is not a private nuisance case such as we have here, where the obligation to abate arises with the municipal entity receiving notice of the continuing private nuisance, which has resulted in significant harm. See City of Milwaukee, 277 Wis. 2d 635, ¶¶51-62.

36

negligently maintained and of which they had notice. Physicians Plus, 254 Wis. 2d 77, ¶¶2-3, 59.

¶68 Our conclusion that municipal entities may be subject to orders for equitable relief also finds support in statutory provisions referring to the availability of equitable relief from continuing nuisances, as well as long-standing precedent to the same effect. Currently, Wis. Stat. § 844.01(1) provides that "Any person owning or claiming an interest in real property may bring an action claiming physical injury to, or interference with, the property or the person's interest therein; the action may be to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief." Wisconsin Stat. § 844.17(1) then provides that "Any person whose activities have injured or will injure the plaintiff's property or interests may be made a defendant." (Emphasis added.) "Person" includes "all partnerships, associations and bodies politic or corporate." Wis. Stat. § 990.01(26). These statutes, therefore, refer to circumstances wherein a political body, such as a municipality, may be subject to an action to redress injury to private property caused by a municipal entity's negligent maintenance of a private nuisance that caused significant harm.

¶69 Indeed, we expressed such an understanding of the common law duty to abate and of immunity in Costas. Therein, we concluded that a private individual could bring an action for abatement of a private nuisance against a municipal entity, thereby reaffirming the longstanding availability of injunctive

37

relief against municipally maintained nuisances. See Costas, 24 Wis. 2d at 413-19 (citing Winchell, 110 Wis. 101) (recognizing that municipal entities may be subject to actions for equitable relief from ongoing nuisances)). In recognizing the availability of such relief, we relied on Wis. Stat. § 280.01, which provided that "any person may maintain an action to recover damages for or to abate a private nuisance." Id. at 414.

¶70 In 1973, the legislature amended Wis. Stat. § 280.01 and created Wis. Stat. § 814.01, which was identical to current Wis. Stat. § 844.01. See § 16, ch. 189, Laws of 1973. The effect of this amendment was to incorporate § 280.01's relief for interferences with private property into the newly consolidated chapters governing actions to enforce interests in real property. See Drafting File for ch. 189, Laws of 1973, Analysis by the Legislative Reference Bureau, Legislative Reference Bureau, Madison, Wis. Therefore, since the abrogation of municipal immunity in Holytz and its subsequent codification in Wis. Stat. § 893.80, not only have we, in Costas, reaffirmed the availability of equitable relief for the abatement of municipal nuisances, but the legislature, after Costas, reaffirmed the availability of such relief when it simply renumbered and reorganized former § 280.01 into what is now § 844.01.

¶71 Therefore, based on the statutory history of Wis. Stat. § 844.01, as well as the common law governing nuisance and the principles of equitable relief, we reach the ineluctable

38

conclusion that a municipal entity may be subjected to claims for equitable relief to abate a negligently maintained nuisance that is a cause of significant harm and of which the municipal entity has notice. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in granting Bostco equitable relief.

¶72 When the circuit court ordered MMSD to abate the private nuisance caused by MMSD's negligent maintenance of its Deep Tunnel, it applied the appropriate legal standard and made a decision that a reasonable court could make. The circuit court's order required MMSD to abate a continuing private nuisance, of which MMSD had notice and which MMSD could abate by reasonable means and at a reasonable cost. The circuit court, however, went one step too far when, without hearing testimony, it concluded that lining the Deep Tunnel was the required means of abatement. Accordingly, we reverse the court of appeals' conclusion that an order for abatement was improper. Abatement is required. We therefore affirm the circuit court's order for abatement, and remand the matter to the circuit court. Upon remand, a hearing may be held to establish whether another method will abate the continuing private nuisance MMSD maintains, or whether lining the Deep Tunnel with concrete is required for abatement.

## F. Remaining Issues

¶73 Having concluded that Bostco is entitled to relief in the form of abatement of MMSD's continuing nuisance, we now turn to Bostco's other asserted claims for relief, beginning with its

challenge to the limitation of damages set forth in Wis. Stat. § 893.80(3), then moving to Bostco's inverse condemnation claim, and finishing with MMSD's claim that Bostco failed to comply with the notice of claim provisions of § 893.80(1) (2005–06). Because we agree with the court of appeals' thorough analyses of these issues,[34] see Bostco, 334 Wis. 2d 620, ¶¶38–65, 85–91, 108–117, we address them briefly.

1. Limitation of damages under Wis. Stat. § 893.80(3)

¶74 Bostco claims that the damage cap under Wis. Stat. § 893.80(3) is unconstitutional, in that it violates equal protection of the law, in contravention of Article I, Section 1 of the Wisconsin Constitution. Section 1 provides:

> All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

Wis. Const. art. I, § 1. Specifically, Bostco asserts that § 893.80(3) violates equal protection (1) facially, by affording complete relief to plaintiffs injured by governmental actions causing less than $50,000 in damages, while arbitrarily limiting the amount of recovery by those plaintiffs who suffer greater damages; and (2) as applied in this case, because parties who

---

[34] Similarly, because our decision does not "overrule" the court of appeals decision, but rather "reverses in part" the decision of the court below in the same case, the rule announced in Blum v. 1st Auto & Casualty Insurance Co., 2010 WI 78, ¶56, 326 Wis. 2d 729, 786 N.W.2d 78, does not apply here. Cf. State v. Ziegler, 2012 WI 73, ¶7 n.3, 342 Wis. 2d 256, 816 N.W.2d 238 (recognizing that supreme court decision "withdrawing language" from previous court of appeals decision does not implicate the Blum rule).

settled with MMSD before June 30, 1994, were not limited to the amounts available under § 893.80(3), while those seeking recovery after that arbitrarily set date are limited to the statutory amounts of recovery.

¶75 Wisconsin Stat. § 893.80(3)'s limitation of damages provides in relevant part:

> Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 181 or 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000.

We have had occasion to review this provision on multiple occasions, including challenges asserting that the limitation on damages violates equal protection. See Sambs v. City of Brookfield, 97 Wis. 2d 356, 293 N.W.2d 504 (1980); Stanhope v. Brown Cnty., 90 Wis. 2d 823, 280 N.W.2d 711 (1979). As noted by the court of appeals in this case, we have upheld § 893.80(3)'s limitation of damages previously, and Bostco has not persuaded us to change our position.

¶76 With regard to Bostco's facial challenge, we reiterate the high standard facing litigants asserting a constitutional challenge: legislative enactments are presumed constitutional, and we will resolve any reasonable doubt in favor of upholding the provision as constitutional. See Stanhope, 90 Wis. 2d at 837. In the context of an equal protection challenge, we will sustain a legislative enactment that creates a distinction

41

between treatment of different groups, if there exists a rational basis to support that distinction, provided that the distinction does not implicate a suspect class or impinge upon a fundamental right. See State v. Quintana, 2008 WI 33, ¶79, 308 Wis. 2d 615, 748 N.W.2d 447. Because Bostco does not assert that it is a member of a protected class, or that recovery in tort from a governmental entity is a fundamental right, we must uphold the damage limitations in Wis. Stat. § 893.80(3), if there exists a rational basis for the legislature to limit the amount of damages recoverable by plaintiffs against governmental entities. See Stanhope, 90 Wis. 2d at 837-842. "The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification." Sambs, 97 Wis. 2d at 371 (emphasis added) (quoting Omernik v. State, 64 Wis. 2d 6, 19, 218 N.W.2d 734 (1974)).

¶77 In Holytz, 17 Wis. 2d at 40, we recognized that the legislature was free to limit the amount of damages that plaintiffs may recover from governmental entities for the torts of those entities or their officers. We have since reiterated that principle in Sambs, 97 Wis. 2d at 371-78, and Stanhope, 90 Wis. 2d at 837-42. We now reaffirm the legislature's valid limitation of the amount of damages recoverable under Wis. Stat. § 893.80(3). The principle we expressed in Stanhope, 90 Wis. 2d at 842, is as applicable today as it was over 30 years ago:

> It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefits the

42

citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit.

Accordingly, we conclude that a rational basis exists for the damage limitations in § 893.80(3), and therefore reject Bostco's facial challenge to that provision.

¶78 In its as-applied challenge to the damage limits in Wis. Stat. § 893.80(3), Bostco asserts that there exists no rational basis for MMSD to treat its claim any differently than those claims that MMSD paid before June 30, 1994, which were not subject to the statutory damage limitations. During the time of construction of the Deep Tunnel, MMSD paid certain property owners for damages caused by soil settlement in the area in which the Deep Tunnel was being constructed. With the belief that it had properly addressed that issue as pertained to affected landowners, MMSD established the June 30, 1994, date as a cutoff for claims, after which MMSD would no longer compensate local landowners for property damage allegedly caused by soil settlement.

¶79 Bostco asserts that the establishment of the June 1994 date was arbitrary, thereby violating the precept that "every person within the state's jurisdiction will be protected against intentional and arbitrary discrimination, whether arising out of the terms of a statute or the manner in which the statute is executed by officers of the state." State ex rel. Murphy v. Voss, 34 Wis. 2d 501, 510, 149 N.W.2d 595 (1967). The necessary corollary, however, is that some inequality is generally

43

insufficient to demonstrate unconstitutional disparate treatment——again, where there exists a rational basis for the unequal treatment, we will sustain the official action as within the legislature's power. See State v. McManus, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989).

¶80 Here, MMSD made the decision to stop paying claims at the end of June 1994, based on its understanding that the situation that had necessitated a dedicated claims procedure had been ameliorated. MMSD provided notice to property owners before November 1993, affording the owners sufficient time to prepare any claims before the cutoff date. Although any time limit for claims against a governmental entity may be deemed arbitrary by those whose claims are made after the deadline, the same primary principle that justifies limits on damage amounts—— protection of the public fisc——supports the reasonableness of imposing a deadline for claims, especially when the deadline is avowedly tied to the governmental entity's asserted belief that it has addressed the problem necessitating the claims procedure. On these bases, Bostco's equal protection challenge fails.[35]

---

[35] As a final challenge to the damage cap, Bostco asserts that continuing nuisances are not subject to Wis. Stat. § 893.80(3)'s damage cap because that section limits the damages recoverable in "any action founded on tort," and a continuing nuisance constitutes multiple, constantly recurring actions. See, e.g., Stockstad v. Town of Rutland, 8 Wis. 2d 528, 534, 99 N.W.2d 813 (1959) ("It is well settled that every continuance of a nuisance is in law a new nuisance and gives rise to a new cause of action."). As the court of appeals noted, only one nuisance action is before the court, and we therefore need not conclude whether the damage cap would apply in a subsequent action allegedly based on the same continuing nuisance.

2.  Bostco's forfeiture of inverse condemnation arguments

¶81  In its complaint to the circuit court, Bostco alleged that MMSD inversely condemned Boston Store's property when it "physically took portions of the timber pilings which rendered them unusable and damaged the Boston Store Building and Parking Garage." (Emphasis added.)  Bostco also alleged that MMSD's conduct amounted to a taking of private property for public use without providing just compensation.  Bostco made the same argument in opposing MMSD's motion for summary judgment and at the summary judgment hearing.  Bostco, however, did not allege that the groundwater beneath Boston Store was taken.  At the court of appeals, Bostco added to its inverse condemnation/takings claim, alleging that in addition to the timber piles, MMSD also took the groundwater beneath Boston Store.

¶82  The court of appeals addressed both the timber piles and the groundwater arguments, and held that Bostco could not establish that either claim met the standard for inverse condemnation, namely, that neither the timber piles nor the groundwater was physically occupied by MMSD and that Boston Store was not "practically or substantially" rendered "useless for all reasonable purposes."  Bostco, 334 Wis. 2d 620, ¶¶111-17. (quoting Howell Plaza, Inc. v. State Highway Comm'n, 92 Wis. 2d 74, 85, 284 N.W.2d 887 (1979)).  The court of appeals therefore affirmed the circuit court's dismissal of Bostco's inverse condemnation/takings claim on summary judgment.  Id., ¶117.

45

¶83 Before us, however, Bostco states in its brief that it "is no longer pursuing its inverse condemnation claim as a taking of the wood piles." Instead, Bostco argues that MMSD "physically took the groundwater" beneath Boston Store. As Bostco is attempting to make a fundamentally different argument than that which it raised and tried before the circuit court, we decline to address its inverse condemnation/takings claim, notwithstanding the court of appeals' decision to reach this issue. See Tatera v. FMC Corp., 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited.").

¶84 Bostco attempts to avoid the effects of forfeiture by alleging that its complaint before the circuit court "was replete with factual allegations about the taking of groundwater." We disagree. Upon review of Bostco's complaint, we conclude that no facts relevant to a taking of groundwater were raised. Rather, the portions of the complaint that allegedly support a claim for the taking of groundwater consist of general recitations of the following arguments: (1) MMSD failed to protect buildings during excavations; (2) MMSD failed to properly respond to unexpected inflows of water; (3) MMSD failed to properly monitor and recharge lowered groundwater levels; (4) the Deep Tunnel damaged Boston Store; and (5) MMSD was aware of the risk of structural damage to Boston Store.

¶85 Most tellingly, Count III of Bostco's complaint, entitled "Inverse Condemnation," does not refer at all to groundwater, and instead focuses entirely on timber piles.

Because Bostco has not preserved the groundwater-based contention for appeal, we decline to address its inverse condemnation/takings claim, and therefore affirm the court of appeals, albeit on modified grounds.

### 3.  Bostco's notice of claim

¶86  Finally, in its cross-appeal, MMSD asserts that Bostco did not serve MMSD with a notice of injury and itemization of relief as required by Wis. Stat. § 893.80(1) (2005-06),[36] and that Bostco's claims therefore should have been dismissed. Specifically, MMSD argues that the notice it received was insufficient because the notices informing MMSD of the damages to the Boston Store buildings and the relief sought were submitted by entities who are not parties to this action. Those entities named in the notice of claim and itemization of relief were Saks, Inc., a corporation that owns Parisian, Inc., and WISPARK Holdings LLC, an LLC owned by the same holding company that owns Bostco. For its part, Bostco argues that the notice of claim and itemization of relief from the related entities amounted to substantial compliance with § 893.80(1), and that, under our case law, such notice is sufficient.

¶87  In pertinent part, Wis. Stat. § 893.80(1) provides

[N]o action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employee of the corporation, subdivision or

---

[36] For ease of reference to the parties' arguments, which are based on the 2005-06 version of Wis. Stat. § 893.80(1), we refer to that version of the statutes in this section of the opinion.

agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee; and

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed.

¶88 The notice of claim provisions serve two purposes:[37] "(1) to give governmental entities the opportunity to investigate and evaluate potential claims, and (2) to afford governmental entities the opportunity to compromise and budget for potential settlement or litigation." E-Z Roll Off, LLC v. Cnty. of Oneida, 2011 WI 71, ¶34, 335 Wis. 2d 720, 800 N.W.2d 421. In keeping with these purposes, we have recognized that

---

[37] We refer to "the notice of claim provisions" collectively here; these provisions include the "notice of injury provision" under Wis. Stat. § 893.80(1)(a), and the "itemization of relief provision" under § 893.80(1)(b), also referred to as the actual "notice of claim provision." See Thorp v. Town of Lebanon, 2000 WI 60, ¶¶23, 28, 235 Wis. 2d 610, 612 N.W.2d 59. Reference to the "notice of claim provisions" is intended to refer to the notices required under both subsections of § 893.80(1).

the notice of claim provisions may be satisfied with substantial, rather than strict compliance. See Figgs v. City of Milwaukee, 121 Wis. 2d 44, 55, 357 N.W.2d 548 (1984). Accordingly, where a claimant fails to strictly comply with the notice of injury provision under Wis. Stat. § 893.80(1)(a), the claimant may nonetheless satisfy that provision by showing that (1) the governmental entity had actual notice of the claim, and (2) the governmental entity was not prejudiced by the claimant's failure to strictly comply. See § 893.80(1)(a); see also State v. Town of Linn, 205 Wis. 2d 426, 435, 556 N.W.2d 394 (Ct. App. 1996).

¶89 Additionally, with regard to Wis. Stat. § 893.80(1)(b), referred to as the itemization or notice of claim provision, see Thorp v. Town of Lebanon, 2000 WI 60, ¶28, 235 Wis. 2d 610, 612 N.W.2d 59, we have noted that two principles guide our analysis of whether a claim is sufficient under that section. First, the claim must provide the governmental entity with enough information to decide whether to settle the claim. See Gutter v. Seamandel, 103 Wis. 2d 1, 10–11, 308 N.W.2d 403 (1981). Second, we will construe claims so as to preserve bona fide claims for judicial adjudication, rather than cutting them off without a trial. See id.

¶90 Here, Bostco's notice of injury informed MMSD that the Boston Store buildings had been damaged by MMSD's operation of the Deep Tunnel. Although the notice and the itemized statement of relief were submitted on behalf of Saks, Inc. and WISPARK Holdings LLC, the naming of these parties cannot reasonably be

49

said to have compromised MMSD's ability to investigate and evaluate the nature of the claim, which was the substantial damage to the Boston Store buildings. Moreover, MMSD has not suffered any prejudice by not knowing precisely which entity owned the property that MMSD was alleged to have damaged; merely being required to litigate, without more, does not demonstrate prejudice. See Luckett v. Bodner, 2009 WI 68, ¶43, 318 Wis. 2d 423, 769 N.W.2d 504.

¶91 Furthermore, the itemization of relief informed MMSD of what relief was being sought, thereby apprising MMSD of potential costs for which it might have wanted to budget, and allowing MMSD to contemplate settlement for the asserted injuries. Had MMSD sought to compromise or settle the claim (which is not the case here), the naming of different corporate entities did not interfere with the purposes of the notice of claim provisions. Most notable for purposes of compromise or settlement, the same law firm represented Saks, WISPARK, Bostco, and Parisian. See DNR v. City of Waukesha, 184 Wis. 2d 178, 198, 515 N.W.2d 888, (1994) (recognizing that notice of claim statute is satisfied when attorney's address is provided), abrogated on other grounds by State ex rel. Auchinleck v. Town of LaGrange, 200 Wis. 2d 585, 547 N.W.2d 587 (1996). Furthermore, the close relationships of the entities involved would have allowed for meaningful exploration into the possibilities of settlement, since the same executives were involved in the operation and control of the various entities.

50

¶92 In support of its argument that Bostco failed to comply with the notice of claim requirements, MMSD relies on the court of appeals' statement in Markweise v. Peck Foods Corp., 205 Wis. 2d 208, 220-21, 556 N.W.2d 326 (Ct. App. 1996), that "unless the government entity has 'actual knowledge' of both the claimant and his or her claim, the investigation and evaluation envisioned by the statute is impossible." That statement, however, arose in the context of thousands of potential claimants against the City of Milwaukee, many of whom remained unknown after the notice of claim. See id. at 221, 232.

¶93 Such was not the case here. MMSD was aware of the property damaged, it was aware of the relief sought, and it had sufficient information to contact the claimants. Accordingly, we conclude that Bostco substantially complied with the notice of claim requirements of Wis. Stat. § 893.80(1), and therefore affirm the court of appeals.

### III. CONCLUSION

¶94 We conclude that MMSD is not entitled to immunity. Once MMSD had notice that the private nuisance it negligently maintained was a cause of significant harm, immunity under Wis. Stat. § 893.80(4) was not available for MMSD. The proper immunity analysis in this case rests on our holding in City of Milwaukee, 277 Wis. 2d 635, ¶59, that "[w]hether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts." Where the negligent act was undertaken pursuant to one of those functions set forth in § 893.80(4)—that is, legislative, quasi-legislative, judicial or quasi-

51

judicial functions——immunity may apply. See id.; see also § 893.80(4).

¶95 Here, Bostco's nuisance claim is grounded in MMSD's negligent maintenance of its Deep Tunnel, which maintenance constituted a continuing private nuisance. See Physicians Plus, 254 Wis. 2d 77, ¶2-3 (explaining that when all the elements of nuisance are proved and the municipal entity has notice that the nuisance is a cause of significant harm, the entity has a duty to abate). Because MMSD's maintenance of the continuing private nuisance is not a legislative, quasi-legislative, judicial or quasi-judicial function, MMSD is not entitled to immunity. See Hillcrest Golf, 135 Wis. 2d at 439-40 (explaining that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)"); see also Welch, 265 Wis. 2d 688, ¶8 (explaining that "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance"); Menick, 200 Wis. 2d at 745 (concluding "there is no discretion as to maintaining the [sewer] system so as not to cause injury"); Wis. Stat. §§ 844.01(1) and 844.20(2) (providing statutory procedure for seeking abatement of private nuisances).[38] The court of appeals' determination that MMSD is not entitled to immunity is therefore affirmed.

¶96 Because MMSD does not have immunity for its negligent maintenance of the Deep Tunnel, we also conclude as follows: On

---

[38] See also Winchell, 110 Wis. at 109 (concluding that the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance").

52

the second issue, we conclude that Wis. Stat. § 893.80(3)-(5) do not abrogate MMSD's duty to abate the private nuisance that MMSD caused by its negligent maintenance of the Deep Tunnel, after MMSD had notice that the nuisance was a cause of significant harm. Therefore, we reverse the court of appeals' denial of the equitable relief of abatement.

¶97 Third, we conclude that the monetary damage cap in Wis. Stat. § 893.80(3) does not violate equal protection, either facially or as applied to Bostco. Moreover, the nature of Bostco's claim as a continuing nuisance does not render § 893.80(3)'s monetary damage cap inapplicable. Accordingly, we affirm the court of appeals' conclusion that the circuit court properly reduced Bostco's monetary damages to $100,000.

¶98 Fourth, with regard to Bostco's inverse condemnation claim, we conclude that Bostco forfeited the argument that it makes before this court, and we therefore affirm the court of appeals on this issue.

¶99 Fifth, we conclude that Bostco substantially complied with the notice of claim provisions under Wis. Stat. § 893.80(1) (2005-06), and that MMSD therefore had sufficient notice under those provisions. Accordingly, we affirm the court of appeals on that issue as well.

¶100 Because neither Wis. Stat. § 893.80(4) nor (3) abrogates MMSD's duty to abate this private nuisance, we reverse the court of appeals' decision in part, affirm that decision in part, and remand to the circuit court for further proceedings consistent with this opinion. In particular, we reverse the

53

court of appeals' reversal of the circuit court's order for abatement, in part. That is, while we affirm the court of appeals on all other issues, we reverse that court's decision that Bostco was not entitled to equitable relief in the form of an order for abatement. Therefore, we affirm the circuit court decision that abatement is required, and we remand this matter to the circuit court. Upon remand, a hearing may be held to establish whether an alternate method will abate the continuing private nuisance MMSD maintains or whether lining the Deep Tunnel with concrete is required for abatement.

¶101 *By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part and the cause remanded to the circuit court.

¶102 DAVID T. PROSSER, J., did not participate.

54

¶103 MICHAEL J. GABLEMAN, J. *(concurring).* I join the majority opinion in toto as I believe it reaches the correct result under our existing immunity law. I write separately, however, to express my dismay that this court continues to apply a series of doctrines that have no connection to the text of the municipal immunity statute (Wis. Stat. § 893.80) or our decision to abrogate all governmental immunity in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962). Rather than utilizing the nuisance approach adopted by the majority, I would instead do away with the ministerial duty and known danger exceptions and restore our immunity jurisprudence to conform with § 893.80(4) and Holytz. That is, governmental entities, officials, and employees should be entitled to immunity only for "acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions."[1] § 893.80(4); see also Holytz, 17 Wis. 2d at 40. As this court has never fashioned a precise definition of that phrase, I recommend that we adopt the "planning-operational distinction" to determine whether governmental action is "legislative, quasi-legislative, judicial, or quasi-judicial." This test "grants immunity only to upper-level legislative, judicial, executive and administrative policy and planning decisions rather than to any decision that might be made." 18 Eugene McQuillin, The Law of Municipal Corporations § 53:16 (3d ed., rev. vol. 2013). If a decision or action does fall into that category, it is

---

[1] Per the immunity statute, municipalities would still be shielded from liability for intentional torts committed by employees. Wis. Stat. § 893.80(4).

considered "planning level" and is immune from suit. Id. On the other hand, "[a] decision resulting from a determination based on preexisting laws, regulations, policies, or standards usually indicates that its maker is performing an operational act." Id. Immunity would not apply to activities of this nature. Id. Because the operation and maintenance of a sewerage system is by definition "operational," it does not fall into the category of actions that are legislative, quasi-legislative, judicial, or quasi-judicial. Our immunity analysis need not go any further to determine that MMSD is not shielded by governmental immunity.

## I.   THE HISTORY OF GOVERNMENTAL IMMUNITY

¶104 To better understand our current governmental immunity quagmire, it will be helpful to briefly survey the historical development of the doctrine. The concept of governmental immunity goes back to the 18th-century English common law notion that "the king could do no wrong," Linda M. Annoye, Comment, Revising Wisconsin's Government Immunity Doctrine, 88 Marq. L. Rev. 971, 973-74 (2005). Or, as Sir William Blackstone put it, "The king . . . is not only incapable of doing wrong, but even of thinking wrong." 1 Blackstone's Commentaries on the Laws of England 187 (Wayne Morrison ed., Cavendish Publishing Limited 2001). The first known case to apply this concept was Russell v. The Men of Devon, (1788) 100 Eng. Rep. 359 (K.B.), in which the Court of King's Bench in England held that an unincorporated county was not liable for damages caused by a faulty bridge. In setting forth the court's ruling, Justice Ashhurst reasoned that

2

"it is better that an individual should sustain an injury than that the public should suffer an inconvenience." Id. at 362. Governmental immunity eventually migrated to the United States, first landing in Massachusetts with Mower v. Leicester, 9 Mass. 247 (1812). Wisconsin subsequently adopted the doctrine in Hayes v. City of Oshkosh, 33 Wis. 314 (1873). There, we utilized reasoning similar to Russell, stating that "[i]ndividual hardship or loss must sometimes be endured in order that still greater hardship or loss to the public at large or the community may be averted." Hayes, 33 Wis. at 319.

¶105 In 1962 this court abrogated the longstanding common law rule of governmental immunity in Holytz, 17 Wis. 2d at 33, noting, "[t]here are probably few tenets of American jurisprudence which have been so unanimously berated as the governmental immunity doctrine." That decision reversed the relationship between injured plaintiffs and government tortfeasors, as we held that "henceforward, so far as governmental responsibility for torts is concerned, the rule is liability——the exception is immunity." Id. at 39. However, we qualified this sea change in the law by cautioning that liability should not attach to a governmental body when it exercises its "legislative or judicial or quasi-legislative or quasi-judicial functions." Id. at 40 (citation omitted). We also said that "[i]f the legislature deems it better public policy, it is, of course, free to reinstate immunity." Id. As the majority opinion observes, the year after Holytz was decided, the legislature enacted an immunity statute that

3

closely tracked some of our language from that decision, thereby codifying the elimination of blanket governmental immunity. Majority op., ¶47; see also Ch. 198, Laws of 1963. The current version of the immunity statute provides that no suit may be brought against any "political corporation, governmental subdivision or any agency thereof" or its "officers, officials, agents or employees" for intentional torts or "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."[2] Wis. Stat. § 893.80(4). But while the

_____

[2] The text of the immunity statute does not mention the state or its employees. Townsend v. Wis. Desert Horse Ass'n, 42 Wis. 2d 414, 422-23, 167 N.W.2d 425 (1969). However, Holytz v. City of Milwaukee, 17 Wis. 2d 26, 40, 115 N.W.2d 618 (1962), abrogated the common law doctrine of immunity for all governmental entities, state or municipal. Given our open invitation for the legislature to reinstate governmental immunity if it thought our decision unwise, the legislative silence with respect to state employees amounted to acceptance of our decision that "so far as governmental responsibility for torts is concerned, the rule is liability——the exception is immunity." Holytz, 17 Wis. 2d at 39; see Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶52, 281 Wis. 2d 300, 697 N.W.2d 417 ("[G]enerally, legislative silence with regard to new court-made decisions indicates legislative acquiescence in those decisions.") (internal quotation marks and citation omitted). Strangely, though, this court has said that "unlike governmental immunity as applied to state employees where immunity is the rule and liability is the exception, the opposite is true for municipal actors, i.e., liability is the rule and immunity is the exception." Pries v. McMillon, 2010 WI 63, ¶20 n.11, 326 Wis. 2d 37, 784 N.W.2d 648 (emphasis added) (citation omitted). This observation is incorrect because the underlined language is plainly at odds with our decision in Holytz, and accordingly there should be no distinction in the treatment of state and municipal entities or their employees. Four years ago, Justice Prosser (joined by Justice Crooks) noted this anomaly in his scholarly concurrence in Umansky v. ABC Ins. Co., 2009 WI 82, ¶¶46-57, 319 Wis. 2d 622, 769 N.W.2d 1. I now express my agreement with Justice Prosser's conclusion that liability is the rule and immunity the exception for both municipalities and the state.

4

legislature codified <u>Holytz</u>'s abrogation of governmental immunity, for the past five decades this court has been chipping away at the <u>Holytz</u> decision and the immunity statute.

## II. THE MINISTERIAL DUTY AND KNOWN DANGER "EXCEPTIONS"

¶106 The first thread of <u>Holytz</u>'s newly woven tapestry to unravel was <u>Lister v. Bd. of Regents</u>, 72 Wis. 2d 282, 300-01, 240 N.W.2d 610 (1976), where this court laid down the discretionary/ministerial test for whether governmental immunity applied. In holding that the University of Wisconsin-Madison Registrar could not be sued for allegedly misclassifying a group of law students as "non-residents" for tuition purposes, we held that government employees are immune when exercising discretion, but that no immunity attaches to the negligent performance of a "ministerial duty." <u>Id.</u> at 300-01. We opined that within the context of governmental immunity a "duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." <u>Id.</u> at 301 (footnote omitted). As the decision on whether to classify a student as a Wisconsin resident for purposes of in-state tuition required "some discretion and judgment," the Registrar was entitled to immunity and the hapless law students were not allowed to make their case that they paid too much tuition. <u>Id.</u> at 301-02.

¶107 The ministerial duty concept, though, came directly from our decision in <u>Meyer v. Carman</u>, 271 Wis. 329, 332, 73

5

N.W.2d 514 (1955). See Lister, 72 Wis. 2d at 301 n.18, 19 (citing Meyer). The problem with relying on a test from Meyer, however, was that case was decided before we abrogated governmental immunity in Holytz. So while it made sense for Meyer to speak of an exception to immunity when immunity was the rule, it made no sense for Lister to adopt an exception to a concept that had already been retired both judicially and legislatively.

¶108 Justice Prosser has also commented on the bizarre development of the ministerial duty exception "from a context in which it was valuable and necessary" to "a context in which it is unfair and absurd." Umansky v. ABC Ins. Co., 2009 WI 82, ¶64, 319 Wis. 2d 622, 769 N.W.2d 1 (Prosser, J., concurring). By "shift[ing] the focus from liability to immunity," Lister turned the Holytz decision upside down without even citing to that momentous case. Id., ¶75. With a sleight-of-hand, Lister cut the guts out of Holytz and essentially restored governmental immunity. As Justice Prosser accurately and poignantly put it: "[s]o far as government responsibility for torts is concerned, immunity has become the rule and liability has become the rare exception. Justice has been confined to a crawl space too narrow for most tort victims to fit." Id., ¶78.

¶109 Following Lister, this court repeatedly relied on the ministerial duty exception to stretch governmental immunity beyond both the text of the statute and the Holytz decision. For example, we have immunized such conduct as a road test examiner's purported negligence in issuing a driver's license to

6

an applicant who was allegedly too overweight to drive,[3] a university instructor's construction of a volleyball net,[4] a school district benefits specialist's incorrect advice,[5] a police officer's allegedly negligent management of a busy intersection during a rain storm,[6] and a high school guidance counselor providing inaccurate information regarding a student's scholarship eligibility requirements.[7] All of these decisions

---

[3] Lifer v. Raymond, 80 Wis. 2d 503, 512, 259 N.W.2d 537 (1977). Justice Robert Hansen colorfully summed up the issue presented in Lifer:

How fat is too fat? Who is too fat to be licensed to get behind the wheel and drive an automobile? Plaintiff alleges that the 320-pound driver of the auto in which he was a passenger was so fat that she should not have been granted a probationary license to drive an automobile, even though she passed the road test portion of the examination.

At what point on the scales does an overweight person suffer a physical disability that prevents him or her from exercising reasonable control over a motor vehicle? The plaintiff answers that the duty to determine when corpulency becomes disabling is on the road test examiner at the time a road test is administered. The plaintiff sues the defendant examiner for breaching a duty owed to the plaintiff passenger when he passed Jeannine M. Yingling in the road test portion of her examination.

Id. at 506-07.

[4] Kimps v. Hill, 200 Wis. 2d 1, 5, 546 N.W.2d 151 (1996).

[5] Kierstyn v. Racine Unified Sch. Dist., 228 Wis. 2d 81, 85, 95, 596 N.W.2d 417 (1999).

[6] Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶¶11, 31, 253 Wis. 2d 323, 646 N.W.2d 314.

[7] Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, ¶¶9, 18, 262 Wis. 2d 127, 663 N.W.2d 715.

are at odds with Holytz and the immunity statute in that none of these actions can fairly be described as "legislative, quasi-legislative, judicial, or quasi-judicial functions." Wis. Stat. § 893.80(4); Holytz, 17 Wis. 2d at 40. Yet that is where this court has taken immunity law courtesy of the misappropriated ministerial duty exception.

¶110 In addition to having no connection whatsoever to the governing statute, the other flaw with the ministerial duty test is that it is excruciatingly narrow. As one court has put it, "it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." Ham v. Los Angeles Cnty., 189 P. 462, 468 (Cal. Ct. App. 1920); see also Swanson v. United States, 229 F. Supp. 217, 219-20 (N.D. Cal. 1964) ("In a strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion."). The upshot of this court's adoption of the ministerial duty exception is that we have in essence overturned Holytz and rewritten Wis. Stat. § 893.80.

¶111 The ministerial duty exception is also the progenitor responsible for the illegitimate birth of the known danger exception. In Cords v. Anderson, 80 Wis. 2d 525, 531-32, 536-38, 259 N.W.2d 672 (1977), a group of college students were injured while hiking at a state park when they fell from an unguarded and unmarked 90-foot cliff into a gorge. The plaintiffs sued the manager of the park (a state employee) for

8

failing to put up warning signs along the trail. <u>Id.</u> at 537-38. The manager, naturally, asserted governmental immunity. <u>Id.</u> However, instead of asking whether the manager's actions were legislative, quasi-legislative, judicial, or quasi-judicial, as <u>Holytz</u> requires for state employees, this court (relying on <u>Lister</u>) framed the question as whether the manager had "an absolute, certain, or imperative duty to either place the signs warning the public of the dangerous conditions existing on the upper trail or to advise his superiors of the condition with a view toward adequate protection of the public responding to the invitation to use this facility." <u>Cords</u>, 80 Wis. 2d at 541. Inexplicably, the court held that because the park manager knew the park terrain was dangerous, "the duty to <u>either</u> place warning signs <u>or</u> advise superiors of the conditions is, on the facts here, a duty so clear and absolute that it falls within the definition of a ministerial duty." <u>Id.</u> at 542 (emphasis added). I say inexplicably because the choice to use one of two options quite obviously renders the decision discretionary rather than ministerial.[8] In any event, to circumvent the

---

[8] This court has also inconsistently applied the known danger exception, most significantly in <u>Lodl</u>. In that case, a heavy rain storm triggered a power outage that caused the traffic lights to go out at a busy intersection. 253 Wis. 2d 323, ¶6. A police sergeant investigated the blackout and decided to open the folded stop signs that were affixed to the poles of the traffic control signals. <u>Id.</u>, ¶7. Another officer arrived on the scene, called for backup, and requested that portable stop signs be brought to the intersection. <u>Id.</u>, ¶8. An accident occurred minutes later, before the police backup or portable signs arrived. <u>Id.</u>, ¶10. The injured plaintiff sued, alleging that the second officer who arrived on the scene had a ministerial duty to manually control traffic at the intersection. <u>Id.</u>, ¶¶11-12. Extrapolating from our reasoning

judicially created ministerial duty test we invented what became known as the "known danger exception," thus creating an exception to an exception. Unfortunately, neither the ministerial duty test nor the known danger test is grounded in Holytz or the immunity statute, so although we reached the correct ultimate conclusion in Cords (immunity does not apply), we took an incorrect route.

III. A NEW APPROACH FOR GOVERNMENTAL IMMUNITY JURISPRUDENCE

¶112 If we were to do away with the ministerial duty and known danger exceptions, what test would we use to determine whether an action is "legislative, quasi-legislative, judicial, or quasi-judicial?" I recommend that this court adopt the "planning-operational distinction." This test, which is used in

---

in Cords v. Anderson, 80 Wis. 2d 525, 259 N.W.2d 672 (1977), we explained that a dangerous situation constitutes a known danger for immunity purposes only when "there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." Id., ¶38 (quoting C.L. v. Olson, 143 Wis. 2d 701, 717, 422 N.W.2d 614 (1988)). With that principle in mind, we concluded that there was no known danger, as the second officer had discretion in deciding how to respond when he arrived at the intersection. Lodl, 253 Wis. 2d 323, ¶¶46-47. Yet this conclusion was clearly at odds with Cords, where we held that the park manager was required to take one of two options. 80 Wis. 2d at 542. For a further elaboration of this point, see Justice Bradley's dissent in Lodl. 253 Wis. 2d 323, ¶¶64, 68-69.

10

some form by a majority[9] of states that no longer recognize governmental immunity,[10] grants immunity to "planning level conduct" but not to "operational level decisions." McQuillin, The Law of Municipal Corporations § 53:16. Planning level conduct touches on questions of public policy and includes those governmental decisions that involve "the balancing of priorities

_____

[9] See Indus. Indem. Co. v. Alaska, 669 P.2d 561, 563 (Alaska 1983); Doe v. Arizona, 24 P.3d 1269, 1271 (Ariz. 2001) (en banc); Steed v. Dep't of Consumer Affairs, 138 Cal. Rpt. 3d 519, 528 (Ct. App. 2012); Cooper v. Hollis, 600 P.2d 109, 111 (Colo. Ct. App. 1979); Dep't of Transp. v. Neilson, 419 So.2d 1071, 1077-78 (Fla. 1982); Julius Rothschild & Co. v. Hawaii, 655 P.2d 877, 880-81 (Haw. 1982) (per curiam); Jones v. City of St. Maries, 727 P.2d 1161, 1163-64 (Idaho 1986); Peavler v. Bd. of Comm'rs of Monroe Cnty., 528 N.E.2d 40, 45 (Ind. 1988); Fowler v. Roberts, 556 So.2d 1, 15 (La. 1989); Jorgensen v. Dep't of Transp., 969 A.2d 912, 917 (Me. 2009); Whitney v. City of Worcester, 366 N.E.2d 1210, 1216 (Mass. 1977); Ross v. Consumers Power Co., 363 N.W.2d 641, 647 (Mich. 1984) (per curiam); Conlin v. City of Saint Paul, 605 N.W.2d 396, 400 (Minn. 2000); Jasa v. Douglas Cnty., 510 N.W.2d 281, 288 (Neb. 1994); Schoff v. City of Somersworth, 630 A.2d 783, 787 (N.H. 1993); Costa v. Josey, 415 A.2d 337, 341-43 (N.J. 1980); Enghauser Mfg. Co. v. Eriksson Eng'g Ltd., 451 N.E.2d 228, 232 (Ohio 1983), superseded by Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code Ann. Ch. 2744 (West 2013); Nguyen v. Oklahoma, 788 P.2d 962, 964-65 (Okla. 1990); Costopoulos v. Gibboney, 579 A.2d 985, 988 (Pa. Commw. Ct. 1990); Bowers v. City of Chattanooga, 826 S.W.2d 427, 430-31 (Tenn. 1992); Stephen F. Austin State Univ. v. Flynn, 228 S.W.3d 653, 657-58 (Tex. 2007); Johnson v. Utah Dep't of Transp., 133 P.3d 402, 409 (Utah 2006); Avellaneda v. Washington, 273 P.3d 477, 482-83 (Wash. Ct. App. 2012); Darrar v. Bourke, 910 P.2d 572, 577 (Wyo. 1996).

[10] "The majority rule is that in the absence of a statute granting immunity, a municipality is liable for its negligence in the same manner as a private person or corporation. The common-law doctrine of sovereign or governmental immunity is a viable defense in this country only in a minority of states [14] and only in certain circumstances." 18 Eugene McQuillin, The Law of Municipal Corporations § 53:3 (3d ed., rev. vol. 2013).

11

and the weighing of budgetary considerations." Id. Operational decisions, on the other hand, "concern the day-to-day operation of government and include decisions based solely upon engineering or scientific considerations." Id. In other words, a decision to adopt (or not adopt) a certain policy would be shielded by immunity, but the implementation of the policy would be subject to traditional tort standards. Cf. Bowers v. City of Chattanooga, 826 S.W.2d 427, 431 (Tenn. 1992).

¶113 This approach is most consistent with the municipal immunity statute and Holytz. To begin with, it would protect "the essential acts of governmental decision-making" from "judicial second-guessing or harassment by the actual or potential threat of litigation." Enghauser Mfg. Co. v. Eriksson Eng'g Ltd., 451 N.E.2d 228, 232 (Ohio 1983), superseded by Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code Ann. Ch. 2744 (West 2013). Specifically, budgetary decisions would be immunized such that a governmental entity could not be sued for inadequately funding a project. Indus. Indem. Co. v. Alaska, 669 P.2d 561, 566 (Alaska 1983). The planning-operational distinction, however, would ensure that citizens are protected from the negligent acts of governmental employees "at the operational level, where there is no room for policy judgment." Jasa v. Douglas Cnty., 510 N.W.2d 281, 288 (Neb. 1994) (citation omitted). Finally, it would restore Holytz by placing the burden on the government to show that it is entitled to immunity, as opposed to the status quo in Wisconsin, where it is now the plaintiff's responsibility to prove that immunity was

12

pierced. McQuillin, The Law of Municipal Corporations § 53:16 (under the planning-operational test, "[t]he governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits.").

¶114 How would this test apply to the present case? MMSD's decision to build the Deep Tunnel system is a planning level decision entitled to immunity. Conversely, had the Deep Tunnel never been built, a plaintiff could not successfully allege that his basement was flooded as a result of MMSD's inaction. The decision not to build is shielded for the same reasons as the decision to build: it is a question of public policy that involves the evaluation of financial, political, economic, and social factors. See Conlin v. City of Saint Paul, 605 N.W.2d 396, 400 (Minn. 2000).

¶115 The day-to-day operation and maintenance of the Deep Tunnel is, quite obviously, "operational," and thus standard negligence principles apply in the same fashion as if the tunnel were built by a private organization. See Whitney v. City of Worcester, 366 N.E.2d 1210, 1216 (Mass. 1977) ("[A] governmental entity is not liable for negligence in the planning of sewers but may be liable for negligence in their construction and maintenance.") (citation omitted). Contrary to MMSD's assertions, this case was tried to the jury as one of operation and maintenance, not design. At a pre-trial hearing, the circuit court stated, "[t]he issue is, okay, as the tunnel is being maintained, operated and inspected by [MMSD], is it

13

creating a nuisance[?]" The court made clear that the case "doesn't have anything to do with the way [the Deep Tunnel] was designed or constructed." Instead, "it has to do with the manner in which it is being operated, which is causing the nuisance."

¶116 The circuit court asked each of the parties to submit a date as to when MMSD took over the operation and maintenance of the Deep Tunnel. Both parties agreed that the date MMSD began operating the Deep Tunnel was the date the jury would use "in determining what, if any acts of negligence . . . MMSD committed." After briefing and argument, the court settled on August 7, 1992, the date MMSD offered as to when the contractor certified that the Deep Tunnel project was substantially completed. The court then made the nature of the case clear to the attorneys:

> [MMSD] is only responsible[,] and the jury will only be asked to assess assuming they find negligence, assess damages that occurred to the Boston Store from that day forward.
>
> So if the proof were, for example, that all of the damages that the foundation, the Boston Store suffered occurred before August 7, 1992, then the jury should enter zero dollars.
>
> On the other hand, if all the damages occurred after August 7, 1992, then whatever those amounts are, that's the number the jury should assess.

¶117 The negligence question submitted to the jury was consistent with the circuit court's remarks to the lawyers at the pre-trial conference: "On or after August 7, 1992 was [MMSD] negligent in the manner in which it operated or maintained the tunnel near Boston Store?" After a two-and-a-

14

half week trial, the jury found that MMSD was negligent and that this negligence was the cause of the damage to Boston Store's foundation. Bostco produced a number of expert witnesses during the trial to support its argument that the negligent operation and maintenance of the Deep Tunnel caused damage to the Boston Store, including an engineer who testified that "[t]he Boston Store has experienced large structural column movement as a result of the <u>operation</u> of the [Deep] Tunnel," and, "[i]f the <u>operation</u> of the [Deep] Tunnel continues under the current conditions, the Boston Store will experience large structural column movements requiring future repair." (Emphasis added). It is our job as an appellate court to search the record for evidence to support, not contradict, the jury's findings. <u>Morden v. Cont'l AG</u>, 2000 WI 51, ¶39, 235 Wis. 2d 325, 611 N.W.2d 659. Here, there is ample evidence in the record to buttress the factual conclusion that MMSD's negligent operation and maintenance of the Deep Tunnel unsettled Boston Store's foundation, causing millions of dollars of damage.

¶118 As the operation and maintenance of a sewerage system is an "operational" rather than "planning-level" decision, this is as far as our immunity analysis needs to go. The conclusion that MMSD is liable for damages under this test would also be in harmony with more than a century of Wisconsin case law, which has reaffirmed that while the decision to build a public works project is entitled to immunity, a governmental entity is liable if its negligent operation and maintenance of the project causes

15

damages or injury.[11]  However, I would also add that even if MMSD were correct that any negligence on its part related solely to the design of the Deep Tunnel, this is not the type of planning-level decision that should be entitled to immunity.  As the Minnesota Supreme Court has held in interpreting that state's governmental immunity statute, "immunity does not bar an action

_____

[11] See Lange v. Town of Norway, 77 Wis. 2d 313, 320, 253 N.W.2d 240 (1977) ("[G]overnmental immunity would apply to acquisition of the [dam and floodgate] by the town.  However, such governmental immunity would not include a failure to maintain as to a condition of disrepair or defect or a failure to properly operate said floodgate."); Naker v. Town of Trenton, 62 Wis. 2d 654, 660, 217 N.W.2d 665 (1974) (per curiam) ("Once the decision is made and the sign is erected, the legislative function is terminated and the doctrine of Holytz that imposes liability for want of ordinary care takes over."); Christian v. City of New London, 234 Wis. 123, 129, 290 N.W. 621 (1940)("The doctrine of the cases dealing with municipally owned waterworks is that the municipality must use proper care in maintaining the means of storage and distribution, or respond in damages to anyone injured."); Mitchell Realty Co. v. City of West Allis, 184 Wis. 352, 363, 199 N.W. 390 (1924) ("In creating a nuisance [in managing a sewage disposal plant] . . . , [the City] must respond in damages . . . ."); Winchell v. City of Waukesha, 110 Wis. 101, 109, 85 N.W. 668 (1901) (the legislative authority to "install a sewer system carries no implication of authority to create or maintain a nuisance, and . . . it matters not whether such nuisance results from negligence or from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual."); Welch v. City of Appleton, 2003 WI App 133, ¶24, 265 Wis. 2d 688, 666 N.W.2d 511 ("Maintenance of sewers so as not to cause injury is generally considered ministerial compared to the discretionary decision relating to design or implementation of a system.") (citation omitted); Menick v. City of Menasha, 200 Wis. 2d 737, 745, 547 N.W.2d 778 (Ct. App. 1996) ("[W]hile the decision to install and provide a sewer system in a community is a discretionary decision, there is no discretion as to maintaining the system so as not to cause injury to residents.  The actions of the City in operating and maintaining the sewer system do not fall within the immunity provisions of [Wis. Stat.] § 893.80.").

when the conduct was merely a professional or scientific judgment." Fisher v. Cnty. of Rock, 596 N.W.2d 646, 652 (Minn. 1999) (citation omitted). Immunity only attaches "if in addition to professional or scientific judgments, policy considerations played a part in making a decision . . . ." Id. (citation omitted). There is nothing in the record to indicate that the design of the Deep Tunnel was anything but a technocratic decision that was farmed out to an engineering firm that MMSD contracted with. While the decision to build the Deep Tunnel was planning-level conduct, the implementation of that decision was operational and thus not entitled to immunity.

## IV. CONCLUSION

¶119 We stated in Holytz that the legislature was free to reinstate governmental immunity. In the five decades since that decision, it has not done so. That choice should be respected by this court rather than undermined.

17

¶120 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. I conclude that the Milwaukee Metropolitan Sewerage District (the District or MMSD) is immune from suit for any monetary damages or injunctive relief in the present case. The District is immune because the Deep Tunnel is being operated and maintained in the manner in which it was designed. Neither Bostco nor the majority opinion has shown otherwise.

¶121 Decisions regarding the design of a municipal improvement project are, according to case law, legislative, discretionary decisions, the type of core decisions for which government entities are immune from suit.[1] Government entities are immune from suit even if the planning, design, and implementation of the project are negligent and lead to a harmful result, including the maintenance of a nuisance.[2]

¶122 If the District were not immune, I would conclude that any monetary damages or injunctive relief in the present case is limited by the statutory cap set forth in Wis. Stat. § 893.80(3).[3] Permitting a circuit court to order ad hoc abatement of a private nuisance, at unlimited cost, circumvents the monetary damage cap and eviscerates the statutory text and

---

[1] Milwaukee Metro. Sewerage Dist. v. City of Milwaukee (City of Milwaukee), 2005 WI 8, ¶9, 277 Wis. 2d 635, 691 N.W.2d 658. See also Allstate Ins. Co. v. Metro. Sewerage Comm'n, 80 Wis. 2d 10, 15-17, & n.3 (collecting cases), 258 N.W.2d 148 (1977).

[2] City of Milwaukee, 277 Wis. 2d 635, ¶¶8, 44, 50, 58, 59, 60; Allstate, 80 Wis. 2d at 16.

[3] I agree that Bostco forfeited its inverse condemnation claim and that Bostco substantially complied with the Notice of Claim requirements. See majority op., ¶¶7-8.

1

legislatively enacted protection of the taxpayer and the public purse.

¶123 Before examining the numerous errata in the majority opinion, let me sound an A*L*A*R*M. The majority opinion drastically and fundamentally increases government liability. This case alone may result in a mandatory expenditure of over $10 million by the District.

¶124 As a matter of courtesy and comity to the legislative branch, the majority opinion should, in my opinion, apply its new-found law only to tortious causes of action occurring after July 15, 2015. Such a delayed effective date would give public bodies time "to enable [them] to make financial arrangements to meet the new liability implicit in this holding"[4] and would give the state legislature time to consider the enactment of a new state policy on government immunity and liability. Delaying the effective date of an opinion that substantially increases government liability is not an original thought. This is exactly what the court did in Holytz v. City of Milwaukee, 17

---

[4] In Holytz v. City of Milwaukee, 17 Wis. 2d 26, 42, 115 N.W.2d 618 (1962), the court explained:

> To enable the various public bodies to make financial arrangements to meet the new liability implicit in this holding, the effective date of the abolition of the rule of governmental immunity for torts shall be July 15, 1962. See sec. 66.18, Stats., regarding liability insurance for both the state and municipalities. The new rule shall not apply to torts occurring before July 15, 1962. However, for the reasons set forth in the supplemental opinion in Kojis v. Doctors Hospital (1961), 12 Wis. 2d 367, 373, 374, 107 N.W.2d 131, 292, this decision shall apply to the case at bar.

2

Wis. 2d 26, 42, 115 N.W.2d 618 (1962), the seminal Wisconsin case abrogating government immunity, at least in part.

¶125 I now turn to a critique of the majority opinion. The first step is to put the case in perspective.

¶126 Bostco asserts (and the majority opinion agrees) that the District is liable in tort for negligently maintaining a private nuisance——a sewer system called the Deep Tunnel——that has interfered with Bostco's real property, regardless of the nature of the District's action that created the nuisance.[5]

¶127 The District derives its power to design and construct sewer systems from the legislature. The legislature has delegated that authority to cities and their sewerage districts. Wis. Stat. § 62.18. In accordance with its legislatively delegated powers, the District designed the Deep Tunnel to be built beneath the City of Milwaukee to collect and store excess sewage and storm water to prevent basement backups and sewer overflows. Taking into account a plethora of policy, planning, regulatory, and budget considerations, the District designed Phase One of the Deep Tunnel to be built beneath downtown Milwaukee. One of the District's design decisions dictated that nearly half of the Tunnel would be lined with concrete while the other half would be porous, allowing groundwater to seep through the soil and bedrock beneath downtown Milwaukee and into the

---

[5] See majority op., ¶¶3, 4, 43, 67, 71, 72.

3

Tunnel.[6]   Decisions regarding the design of a municipal improvement project are, according to case law, legislative, discretionary decisions, the type of core decisions for which government entities are immune from suit.[7]

¶128 Since going into service in 1993, the Tunnel, according to the record, has been operated and maintained by the District in the manner in which it was designed to function. Both Bostco and the majority opinion have failed to demonstrate any way in which the Deep Tunnel is failing to function as it was designed to function.  Moreover, neither Bostco nor the majority opinion has pointed to any applicable standard, that is, to any applicable statute, guideline, or regulation, requiring the District to operate or maintain the Deep Tunnel in

---

[6] Some of the other decisions the District made include: the route of the Tunnel beneath the City, the Tunnel's length (19.4 miles) and diameter (varying between 17 and 32 feet), the Tunnel's depth (300 feet below ground), and the Tunnel's capacity (405 million gallons of water).

A stipulation during litigation between the District and the Department of Natural Resources in 1986 permitted the District to line only portions of the Tunnel.  The District's current permit from the DNR requires the Tunnel to have a positive inward gradient, that is, to allow water to flow into the Tunnel in order to prevent the possible exfiltration of wastewater.

[7] City of Milwaukee, 277 Wis. 2d 635, ¶9.  See also Allstate, 80 Wis. 2d at 15-17 & n.3 (collecting cases).

In City of Milwaukee, the court referred to these types of design decisions as "legislative" functions.  See City of Milwaukee, 277 Wis. 2d 635, ¶¶9, 55, 57, 58, 60, 91.  For the sake of consistency, I will refer to them as "legislative" as well.

4

a manner different than the way in which it was designed to function.[8]

¶129 Even if the District designed the Tunnel in a poor and negligent manner and has created a nuisance and injured Bostco, the District is immune from suit for that design and for the operation and maintenance of the Tunnel in accordance with that design.[9]

¶130 I dissent because the majority opinion reaches the wrong result by revising history, erroneously interpreting cases and statutes, isolating and citing language from cases out of context, relying on and reinvigorating recanted cases, and silently and surreptitiously overturning precedent.

¶131 This criticism is, alas, easy to level and to prove (and I shall). At the same time it is important to acknowledge, and I do, that the law of government tort immunity over the last 50 years since Holytz has become encrusted with not-always-consistent case law. Indeed the law may be described as having become once again "knee-deep in legal esoterica," and replete with "highly artificial judicial distinctions."[10]

---

[8] When the court of appeals commented on this court's City of Milwaukee decision, it explained in DeFever v. City of Waukesha that "[b]ecause MMSD could not point to laws directing the City how to inspect, monitor, and repair or replace the water main, the City's duty was discretionary rather than ministerial." DeFever v. City of Waukesha, 2007 WI App 266, ¶12, 306 Wis. 2d 766, 743 N.W.2d 848 (citing City of Milwaukee, 277 Wis. 2d 635, ¶¶56-60).

[9] City of Milwaukee, 277 Wis. 2d 635, ¶¶8, 44, 50, 58, 59, 60; Allstate, 80 Wis. 2d at 16.

[10] Holytz, 17 Wis. 2d at 30, 32.

¶132 The concurrence bemoans the fact that courts have drifted away from the text of Wis. Stat. § 893.80, never having "fashioned a precise definition of [the] phrase" "legislative, quasi-legislative, judicial, or quasi-judicial functions." Concurrence, ¶1. Not completely true!

¶133 Case after case has explained that these terms "have been collectively interpreted to include any act that involves the exercise of discretion and judgment."[11] The concurrence might not characterize this definition as "precise," but it is just as precise (or imprecise) as the concurrence's recommended "planning-operational" distinction as a sound interpretation of the statutory words.[12]

¶134 Indeed, this court has explicitly "decline[d] the invitation to create a planning/operational distinction to be utilized in the analysis of state employee immunity," because the distinction is "ill-defined and difficult to apply." Kimps v. Hill, 200 Wis. 2d 1, 24, 546 N.W.2d 151 (1996). The planning/operational distinction has not become better defined or easier to apply since Kimps. Cases from other jurisdictions (both before and after Kimps) demonstrate that using a "planning-operational" distinction between acts that are immune

---

[11] City of Milwaukee, 277 Wis. 2d 635, ¶54. For similar statements, see Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶21, 253 Wis. 2d 323, 646 N.W.2d 314; Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶¶25, 27, 235 Wis. 2d 409, 611 N.W.2d 693; Lifer v. Raymond, 80 Wis. 2d 503, 509, 511-12, 259 N.W.2d 537 (1977); Lister v. Bd. of Regents, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976).

[12] See concurrence, ¶¶1, 10-11.

6

and those for which a government entity is liable provides no silver bullet piercing the difficulties associated with interpreting and applying rules of government immunity and liability.[13]

¶135 Government immunity and liability is a complicated area of jurisprudence with 50 years of Wisconsin case law precedent that is not always easy to explain or justify. Periodically the court has attempted to synthesize and clarify our cases. This court's decision in Milwaukee Metropolitan Sewerage District v. City of Milwaukee (City of Milwaukee), 2005 WI 8, 277 Wis. 2d 635, 691 N.W.2d 658, just eight years ago, went a long way to clarify the issues presented in the instant case——nuisance, negligence, liability, and immunity. And here we are moving away from that decision.[14]

¶136 Perhaps our whole body of case law interpreting Wis. Stat. § 893.80 needs to be carefully revisited. Indeed, ten years ago I wrote that the court has struggled to define the proper scope of government immunity, that revisiting the scope

---

[13] The courts have not found this distinction easy to apply and decisions have not been consistent within a state or from state to state. For a discussion of this distinction and cases, see 18 Eugene McQuillin, Municipal Corporations § 53:16 (3d ed. rev. 2013).

[14] When a court has "authoritatively construed a statute, well-established principles of judicial decision-making require that the chosen construction be maintained unless and until the legislature either amends or repeals the statute." Reiter v. Dyken, 95 Wis. 2d 461, 470, 290 N.W.2d 510 (1980); Zimmerman v. Wis. Elec. Power Co., 38 Wis. 2d 626, 633-34, 157 N.W.2d 648 (1968). The majority opinion does not adhere to this rule of statutory interpretation.

and limits of government immunity has far-reaching impact, and that if this court should undertake such a task it should do so only with the benefit of full information, including briefs from tort victims, the State of Wisconsin, the League of Wisconsin Municipalities, the Wisconsin Counties Association, and the Wisconsin Insurance Alliance.[15]

¶137 The majority opinion does not carefully revisit the law and does not have full information. Instead, unfortunately, the majority opinion further muddies the waters.

¶138 I am writing this dissent to focus attention on the mistaken premises upon which the majority opinion is based. I shall proceed by listing each erratum with a brief description, followed by a more extensive discussion.[16]

### ERRATUM I. (¶¶44-65, infra)

¶139 **THE INITIAL BAIT-AND-SWITCH.** The majority opinion rests heavily on the old bait-and-switch trick.

¶140 **Here's the basic bait:** The majority opinion (at ¶3) declares that it "rests on our holding in Milwaukee Metro. Sewerage District v. City of Milwaukee." I joined this City of Milwaukee opinion. I agreed with it then. I agree with it now.

---

[15] Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, ¶¶58-59, 262 Wis. 2d 127, 663 N.W.2d 715 (Abrahamson, C.J., concurring).

[16] I have tried to point out what I view as the major errors in the majority opinion. There are others. Inconsistent statement of legal principles, inconsistent application of legal principles, and inconsistent use of language cause additional problems.

¶141 **Here's the switch:** The majority opinion fails to adhere to City of Milwaukee and to Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co., 2002 WI 80, 254 Wis. 2d 77, 646 N.W.2d 777, upon which City of Milwaukee relies.

¶142 **Here's the bait again:** The majority opinion (at ¶3) correctly states the rule of law set forth in City of Milwaukee: "Whether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts."[17]

¶143 City of Milwaukee then declares the following rule of law regarding the character of the negligent act:

> A municipality is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature. A municipality does not enjoy immunity from suit for nuisance when the underlying tortious conduct is negligence and the negligence is comprised of acts performed pursuant to a ministerial duty.[18]

¶144 The City of Milwaukee court did not decide whether the City was immune from suit for failing to repair a leaking main

---

[17] City of Milwaukee, 277 Wis. 2d 635, ¶59. See also id., ¶90.

[18] City of Milwaukee, 277 Wis. 2d 635, ¶8. See also id., ¶¶59-60, 90-91.

See also id., ¶9:

> Decisions concerning the adoption, design, and implementation of a public works system are discretionary, legislative decisions for which a municipality enjoys immunity. Thus, the City is immune from suit relating to its decisions regarding the adoption of a waterworks system, the selection of the specific type of pipe, the placement of the pipe in the ground, and the continued existence of such pipe.

9

before it ruptured. The court declared that the record was not sufficiently developed to determine whether the City was under a ministerial duty (a non-legislative duty) or a discretionary duty (a legislative duty) to repair the leaking main prior to its rupture. The City of Milwaukee court directed that "the circuit court must consider this issue on remand."[19]

¶145 **Here's the switch:** The majority opinion (at ¶41) recasts City of Milwaukee to state: "The duty to fix the pipe, if the City knew it was leaking, was 'absolute, certain and imperative,'——in other words, ministerial——even though a particular method of repairing the leak was not 'absolute, certain and imperative.'"

¶146 According to the majority opinion (at ¶43 n.25): "[I]t is the manner in which MMSD complies with the ministerial duty to fix the problem that is subject to discretion; no such discretion exists as to whether MMSD must fix the known problem." The majority opinion further states (at ¶51):

---

[19] City of Milwaukee, 277 Wis. 2d 635, ¶62:

Having reviewed the record, we determine that the facts of the present case are not sufficiently developed for us to determine whether the City was under a ministerial duty to repair the leaking main prior to its break on December 9, 1999. . . . [W]e cannot conclude whether [the City's] duty to repair the leaking main with reasonable care before it broke was "absolute, certain and imperative," or whether the City's decision not to repair the main before the break was discretionary. As such, we cannot determine whether the City is entitled to governmental immunity under § 893.80(4) based on the record before us (internal citations omitted).

See also id., ¶¶90-91.

10

> [A]lthough a municipal entity escapes liability for its legislative or quasi-legislative decision regarding whether to install a particular system or structure, once the municipal entity makes the decision to install, the entity is under a subsequent ministerial duty to maintain the system or structure in a safe and working order.[20]

¶147 In other words, according to the majority opinion (¶¶51, 64), once a municipal entity installs a particular system or structure, the entity is under a subsequent ministerial duty to maintain the system or structure in a safe manner and is liable for any damages negligently caused, no matter the act that caused the nuisance or the damage.[21]

---

[20] This sentence is an example of the majority opinion's inconsistent and confusing use of the word "maintain." "Maintain" is sometimes used to mean "to keep a structure in a state of repair." At other times, the majority opinion uses the word "maintain" to mean that a municipality "maintains a nuisance," after its actions "created" or "caused" or "resulted in" the existence of the nuisance.

Before a sewer system can be "maintained" in a proper state of repair, the system must first be "created." At times, the majority opinion alludes to the fact that the District has "created and maintained a nuisance," while at other times, the majority opinion simply concludes that the District has "maintained a nuisance." See also ¶77, infra.

This case is unlike Physicians Plus, where an act of nature created, caused, or resulted in a nuisance——a tree hanging over and obstructing a stop sign. In the present case, the Tunnel is a man-made object created by the District, the existence of which has resulted in a nuisance. The majority opinion repeatedly asserts that the District "maintains" the nuisance or "keeps [the Tunnel] in that state."

[21] According to the majority opinion, "[A] municipal entity's failure to abate a continuing nuisance caused by negligent maintenance of a system" after the entity has notice does not constitute a discretionary act. Majority op., ¶64.

11

¶148 The majority opinion flouts the City of Milwaukee rule of law that distinguishes between operation and maintenance of the Tunnel that may in particular circumstances be legislative actions, and operation and maintenance of the Tunnel that may in other circumstances be ministerial actions. The majority opinion then imposes liability in a limited amount for damages for negligent operation and maintenance of a nuisance and unlimited injunctive relief for a nuisance, regardless of whether the negligently created nuisance is a result of discretionary action or a failure to fulfill a ministerial duty.

## ERRATUM II. (¶¶66 to 86, infra)

¶149 **A CONTINUED BAIT-AND-SWITCH.** After promising to adhere to City of Milwaukee, the majority opinion contravenes City of Milwaukee in a second way: It repeatedly relies on cases explicitly called into doubt by City of Milwaukee[22] and asserts (sometimes in slightly different language) that "there is no discretion as to maintaining the [sewer system] so as not to cause injury."

¶150 Some cases upon which the majority opinion depends were decided before Holytz and the enactment of Wis. Stat.

---

There are, however, contradictory statements scattered in the majority opinion. See, for example, majority op., ¶66, requiring a court to determine first whether immunity applies to the actions that caused the nuisance the plaintiff is asking to stop. If immunity applies to the actions, then no relief is available, no matter the result. This is the rule clearly laid down in City of Milwaukee.

[22] City of Milwaukee, 277 Wis. 2d 635, ¶¶55 n.14, 58 n.15, 59 n.17.

12

§ 893.80 (_Winchell_).[23]   Others were decided after _Holytz_ and § 893.80 (_Costas_,[24] _Hillcrest_,[25] _Menick_,[26] and _Welch_[27]).   These cases have all been called into question by subsequent case law, especially by _City of Milwaukee_.[28]   Thus once again the majority opinion has baited us with a promise to adhere to the _City of Milwaukee_ case but has switched to repudiating _City of Milwaukee_.

### ERRATUM III. (¶¶87 to 99, infra)

¶151 **EQUITABLE CLAIM: WIS. STAT. § 893.80(3).**   The majority opinion bends the text of Wis. Stat. § 893.80(3) to conclude

---

[23] _Winchell v. City of Waukesha_, 110 Wis. 101, 85 N.W. 668 (1901).   _See_ majority op., ¶¶4 n.4, 35 n.18, 69, 98 n.3p.

[24] _Costas v. City of Fond du Lac_, 24 Wis. 2d 409, 129 N.W.2d 217 (1964).   _See_ majority op., ¶¶31, 33, 35, 41 n.22, 64, 69, 70.

[25] _Hillcrest Golf & Country Club v. City of Altoona_, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986).   _See_ majority op., ¶¶4, 63, 64, 98.

[26] _Menick v. City of Menasha_, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1995).   _See_ majority op., ¶¶4, 36, 37, 60, 98.

[27] _Welch v. City of Appleton_, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511.   _See_ majority op., ¶¶4, 34, 37 & n.20, 98.

[28] _Anhalt v. Cities & Vills. Mut. Ins. Co._, 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422, repeats the mantra oft repeated in the majority opinion:   In a suit against a municipal entity for negligent operation and failure to maintain an adequate sewerage system, the complainant has to show only that the sewerage system failed due to negligence, rather than showing the negligence stemmed from the municipal entity's failure to perform a ministerial duty.   The _Anhalt_ holding, however, does not support this refrain.   _See_ discussion at ¶¶80-91, 83-85, _infra_.

13

that the $50,000 statutory cap does not apply to a court order directing a municipal entity to abate a nuisance founded on tort for which it is liable.[29]

¶152 Espousing an ordinary and reasonable interpretation of the phrase "the amount recoverable by any person for any damages . . . in any action founded on tort" in § 893.80(3), the majority opinion concludes that this phrase means only money damages awarded to the complainant. The majority opinion disregards the fact that in many instances there may be no substantial difference for both the complainant and the government entity between a monetary sum awarded to a complaining party to remedy its injury and injunctive relief directed to a government entity forcing it to remedy the complaining party's injury.[30] In either event, the complainant recovers and gets the relief sought, and the government entity must expend funds. This statutory phrase, given its ordinary

---

[29] Wisconsin Stat. § 893.80(3) provides in relevant part as follows:

> Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any . . . political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000. . . .

[30] Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2011 WI App 76, ¶133, 334 Wis. 2d 620, 800 N.W.2d 518 ("From the standpoint of the public treasury, there is little difference in practice between a monetary damage award given to a plaintiff to remedy its harm and in injunction order requiring the defendant to abate the harm.").

14

and reasonable meaning, governs both monetary damages and injunctive relief in any action founded on tort.

¶153 The majority opinion is oblivious to the extreme irony in limiting monetary damages to $50,000 for public policy reasons while requiring government entities to pay as much as it takes to abate a nuisance.

¶154 The majority opinion's interpretation of Wis. Stat. § 893.80(3) is unreasonable and absurd, as it renders meaningless the $50,000 legislatively mandated limit on the amount a government entity must expend when liable for its tortious conduct.

**ERRATUM IV. (¶¶100 to 132, infra)**

¶155 **EQUITABLE CLAIM CONTINUED: WIS. STAT. § 893.80(3), (4), and (5).** The majority opinion offers up a potpourri of arguments to support its thesis that Wis. Stat. § 893.80(3), (4), and (5) do not apply to injunctive relief in a tort action such as the present case. In all of its analysis, the majority opinion overlooks the plain text of Wis. Stat. § 893.80(3), (4), and (5). The texts are broadly worded, regulating "any action founded on tort," "any suit," and "all claims against a . . . governmental subdivision," and declaring that § 893.80 shall be "exclusive."

¶156 Clearly Bostco's request for injunctive relief in this tort action is encompassed in "any suit." It is labeled a claim and is a "claim" that fits within the statutory phrase "all claims."

15

¶157 Section 893.80 uses all-encompassing words, like"any action founded on tort," "any suit," "exclusive," and "all claims" to include injunctive and "all" types of relief for negligent tortious conduct within the confines of § 893.80.

¶158 The majority opinion offers no statute (or precedent) excluding injunctive relief from Wis. Stat. § 893.80 or excluding the facts of the present case from § 893.80.

¶159 The majority opinion enables a court to order abatement of a private nuisance at unlimited cost, thereby eviscerating the text and legislatively enacted protection of the taxpayer and the public purse.

### ERRATUM V. (¶¶133 to 152, infra)

¶160 **EQUITABLE CLAIM: MANY UNANSWERED QUESTIONS.** The majority opinion fails to discuss injunctive relief in any meaningful manner. The injunctive remedy adopted by the majority opinion leaves more questions than answers. In ordering injunctive relief, the majority opinion does not pay particular attention to the public consequences and hardships of granting injunctive relief, as required by law. It does not recognize that the legislature has declared that the statutorily allowed damages are sufficient. It does not determine whether Bostco's contributory negligence reduces the available equitable relief. It disregards the practicability of a court's framing and enforcing an injunctive order when the Deep Tunnel is a municipal structure highly regulated by state and federal laws and overseen by the Department of Natural Resources.

### ERRATUM VI. (¶¶153 to 158)

16

¶161 **UNFUNDED MANDATE: CONTRARY TO PUBLIC POLICY.** The majority opinion expands government liability and increases costs for government entities and taxpayers. This results in an unfunded mandate on government entities. Increased government liability is contrary to recent legislative expressions of state policy that reduce government liability and reduce potential recovery for tort victims. The majority opinion is marching in the opposite direction from the legislature.

¶162 On consideration of these serious errata, I dissent.

I

¶163 I agree with the majority opinion that the proper negligence, nuisance, liability, and immunity analyses rest upon City of Milwaukee. Majority op., ¶3. The decision in City of Milwaukee builds on the Physicians Plus decision and carefully analyzes half a century of precedent.[31] The rub, as I have stated, is that the majority opinion does not adhere to the City of Milwaukee decision.

¶164 The negligent creation and known existence of a nuisance are alone insufficient to impose liability on a municipal entity. As City of Milwaukee instructs, once a property owner proves the existence of a nuisance and notice to the entity, the owner must also prove that the underlying tortious conduct giving rise to the nuisance constitutes actionable negligence.[32]

---

[31] City of Milwaukee, 277 Wis. 2d 635, ¶¶24-49.

[32] Id., ¶¶6, 7.

17

¶165 Once actionable negligence is established, the next step under City of Milwaukee is to determine the nature of the municipal entity's negligent acts in order to determine whether the entity is liable or immune. As City of Milwaukee explained: "[A] municipality may be immune from nuisance suits depending on the nature of the tortious acts giving rise to the nuisance. A municipality is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature."[33]

¶166 City of Milwaukee further explained that "[d]ecisions concerning the adoption, design, and implementation of a public works system are discretionary, legislative decisions for which a municipality enjoys immunity."[34] Thus, if the nuisance in the present case is predicated on negligent "[d]ecisions concerning the adoption, design and implementation of" the Deep Tunnel, then such actions are "discretionary, legislative decisions" for which the District enjoys immunity.[35]

---

[33] City of Milwaukee, 277 Wis. 2d 635, ¶8 (emphasis added); see also id., ¶¶58-59, 62, 90.

[34] Id., ¶9.

[35] Id.

City of Milwaukee makes clear that some of these discretionary, immune decisions include "decisions regarding the adoption of a waterworks system, the selection of the specific type of pipe, the placement of the pipe in the ground, and the continued existence of such pipe." City of Milwaukee, 277 Wis. 2d 635, ¶9. Applying these principles to this case, some of the District's discretionary decisions, which are immune from suit, include decisions regarding the adoption of a Deep Tunnel system, the selection of the specific type of Tunnel system, the placement of the Tunnel in the ground, and the continued existence of the Tunnel.

18

¶167 In contrast, if the nuisance is predicated on a negligent act in performing a ministerial duty to operate or maintain the Deep Tunnel that caused the nuisance, then the District is liable.[36]

¶168 In City of Milwaukee, the City's water main was obviously neither designed nor constructed to leak. All agreed that the water main leaked and then ruptured, causing damage to MMSD's sewer. MMSD in that case did not allege that the City was negligent in failing to repair the main after it ruptured. MMSD alleged that the City was negligent and created a nuisance by failing to monitor and inspect the system to detect leaks, and by failing to repair the main before it ruptured. The question before the Supreme Court was whether the City had a ministerial duty to act while the water main was leaking before the main ruptured.[37]

¶169 At no time in City of Milwaukee did this court decide that the City had a ministerial duty to abate a nuisance merely because it had notice of the nuisance. The court decided only that the City may be liable if it had sufficient notice that created an "absolute, certain, and imperative" duty to act.[38]

---

[36] City of Milwaukee, 277 Wis. 2d 635, ¶9.

[37] Id., ¶¶8, 9, 61.

[38] The majority opinion, ¶¶38-41, 43, recasts City of Milwaukee by zeroing in on some sentences of the opinion but not reading them in context of the entire opinion. City of Milwaukee did not create a rule whereby a government entity's notice of a nuisance automatically creates a general ministerial duty to abate the nuisance, as the majority opinion in the present case claims.

19

¶170 The majority opinion (at ¶¶41, 51) recasts City of Milwaukee to state that once the District had notice that it had negligently created a private nuisance that caused damage, it had a ministerial duty to abate the nuisance. According to the majority opinion, "[O]nce the municipal entity makes the decision to install, the entity is under a subsequent ministerial duty to maintain the system or structure in a safe and working order." Majority op., ¶51 (footnote omitted).

¶171 This recasting of City of Milwaukee contradicts precedent. Case law instructs that the court must look at the act, and not simply the result. In Allstate Insurance Co. v. Metropolitan Sewerage Commission, 80 Wis. 2d 10, 258 N.W.2d 148

---

A reading of the entire opinion reveals that notice was a threshold issue but was not dispositive. City of Milwaukee clearly states that the next question to be addressed by the circuit court was whether the act was discretionary. City of Milwaukee never stated that if the city had notice, a general ministerial duty to stop the leaking would necessarily follow.

A concurring opinion by Justice Prosser in City of Milwaukee demonstrates that this court did not remand to the circuit court just for the purpose of determining whether the City was on notice that the water main was leaking. Justice Prosser stated that "this formulation [in the City of Milwaukee of discretionary and ministerial actions] is so narrow that it appears to decide the case." City of Milwaukee, 277 Wis. 2d 635, ¶95 (Prosser, J., concurring) (internal citations omitted).

Butler v. Advance Drainage Systems, Inc., 2005 WI App 108, ¶40, 282 Wis. 2d 776, 698 N.W.2d 117, quotes City of Milwaukee and states that the first step in a negligent nuisance action is to determine whether a nuisance is present; the second step is to determine the underlying tortious conduct; and the third step is to decide whether the defendant's conduct "is 'otherwise actionable under the rules governing liability for negligent conduct.'"

20

(1977), the court explained that "[w]here, when and how to build sewer systems are legislative determinations imposed upon a governmental body."[39] So long as the parts of the sewer system, in that case a manhole, were placed at a location in compliance with the plans, their placement is an act in compliance with a legislative function that is subject to immunity.[40] Initial planning and implementation decisions are immune even though "the placement and subsequent use of the manhole may have created a danger."[41]

¶172 _Allstate_ teaches that the District may have a ministerial duty to operate and maintain the Deep Tunnel functioning in its original, intended state. The ministerial duty to operate and maintain the Tunnel does not, however, require making improvements to the Tunnel, even if an improvement is necessary to avoid harm.[42]

¶173 The problem in the present case is that no one examines the District's acts. No one——not Bostco, not the witnesses, not the jury, not the circuit court, not the court of appeals, and not the majority opinion——identifies the District's allegedly negligent acts that caused the nuisance or characterizes the negligent acts as either discretionary

---

[39] _Allstate_, 80 Wis. 2d at 16.

[40] _City of Milwaukee_, 277 Wis. 2d 635, ¶58 (citing _Allstate_, 80 Wis. 2d at 16).

[41] _Allstate_, 80 Wis. 2d at 16.

[42] _Id._ at 15-16; _cf._ _Hocking v. City of Dodgeville_, 2010 WI 59, ¶¶45, 48, 326 Wis. 2d 155, 785 N.W.2d 398.

21

(legislative) or ministerial (non-discretionary, non-legislative).

¶174 Bostco's complaint broadly alleges that two District actions led to the continuing private nuisance: 1) the District's negligent design and construction of the Tunnel; and 2) the District's failure to exercise ordinary care in the inspection, repair, maintenance, and operation of the Tunnel.

¶175 The record does not identify any District actions that are not related to design and construction.

¶176 The jury in the present case was never instructed to identify which negligent conduct caused the nuisance. The jury was not asked to determine whether the negligent conduct was related to the District's design and construction of the Tunnel or to the District's maintenance and operation of the Tunnel unrelated to the design and its implementation. The jury was thus not instructed about or asked about disaggregating the District's negligent legislative acts and the harm caused thereby and the District's negligent non-legislative acts and the harm caused thereby.[43]

---

[43] The pertinent portion of the jury instructions reads as follows:

> The District is specifically required by law to project, plan, design, construct, maintain and operate the sewerage system including the collection, transmission and disposal of storm water and groundwater.
>
> As I [the circuit court judge] told you earlier, the planning, design and construction of the tunnel are not issues in this case.

¶177 The circuit court did not differentiate between legislative and non-legislative acts in analyzing the District's conduct in operating and maintaining the Tunnel.

¶178 The majority opinion does not attempt to do so, although, as I have explained, this distinction is crucial under City of Milwaukee.

¶179 City of Milwaukee clearly instructs that "the proper inquiry is to examine the character of the underlying tortious acts,"[44] because "liability depends upon the existence of underlying tortious acts that cause the harm."[45] The Restatement (Second) of Torts illustrates this point as follows:

> [F]or a nuisance to exist there must be harm to another or the invasion of an interest, but there need not be liability for it. If the conduct of the defendant is not a kind that subjects him to liability . . . the nuisance exists, but he is not liable for it.[46]

The claims in this case involve claims for negligence based on the operation, maintenance and inspection of the tunnel on or after August 7, 1992. Evidence of events prior to August 7, 1992, was admitted and may be considered by you insofar as it bears on the knowledge of the parties and actions of the parties after August 7, 1992.

[44] City of Milwaukee, 277 Wis. 2d 635, ¶59.

An accompanying footnote at ¶59 n.18 in City of Milwaukee reads: "Thus, the court of appeals in the instant case misstated the law when it concluded that § 893.80(4) immunizes a municipality from a cause of action alleging negligence but not a nuisance claim that is based in negligence. *Milwaukee Metro. Sewerage Dist. [v. City of Milwaukee],* 2003 WI App 209, ¶22, 267 Wis. 2d 688, 671 N.W.2d 346."

[45] City of Milwaukee, 277 Wis. 2d 635, ¶25.

[46] Id. (quoting Restatement (Second) of Torts § 821A cmt. c (emphasis in City of Milwaukee)).

23

¶180 As City of Milwaukee made clear:

[I]t is incorrect to speak of nuisance "as itself a type of liability-forming conduct . . . ."[47]

. . . .

Focusing the immunity analysis on the character of the tortious acts underlying the nuisance is important for two reasons. First, . . . liability for nuisance is itself dependent upon whether the underlying tortious conduct is actionable. Second, and more importantly, Wis. Stat. § 893.80(4) does not immunize municipalities for certain results; rather, immunity is provided for certain acts.[48]

¶181 Indeed, in contrast to its other statements, the majority opinion itself recognizes that "when a plaintiff seeks equitable or injunctive relief against a municipal entity, a court must first answer the threshold question of whether immunity applies. If a court concludes that the actions the plaintiff is seeking to stop through a suit in equity are legislative, quasi-legislative, judicial or quasi-judicial, then the suit must be dismissed because the governmental entity is protected by immunity." Majority op., ¶66; see also id., ¶64.

¶182 In sum, the majority opinion cannot use the District's alleged negligent design or construction of the Tunnel in determining the District's liability, because those actions would be protected by immunity. The majority has not pointed to any of the District's alleged negligent operation and maintenance of the Tunnel that is not in compliance with the

---

[47] City of Milwaukee, 277 Wis. 2d 635, ¶26 (quoting Restatement (Second) of Torts § 822 cmt. c (emphasis added)).

[48] City of Milwaukee, 277 Wis. 2d 635, ¶59 n.17 (emphasis in original).

manner in which the Tunnel was designed. The Tunnel is not broken; it is functioning in compliance with the "plan adopted," as it was designed to function. Therefore, to create liability, the majority opinion must assert that the District negligently maintained a private nuisance, that is, that its conduct (its failing to repair the Tunnel, which was operating as designed) failed to fulfill a ministerial duty to abate.

¶183 The majority opinion ignores the clear directive in City of Milwaukee that "[a] municipality is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature."[49] The majority opinion bends that clear rule to hold that the maintenance of a nuisance itself is the act which is not discretionary in nature. According to the majority opinion, no longer is the act (that creates the result) the basis for liability, but rather the result (the nuisance) creates liability no matter what act caused that result.[50]

¶184 To repeat, neither Bostco nor the majority opinion has alleged that the Tunnel is malfunctioning. If the Deep Tunnel is functioning as designed, in compliance with the "plan adopted" and it is not broken, then, according to City of Milwaukee and Allstate (and Welch & Anhalt), the District does not have a ministerial duty to repair it.

---

[49] Id., ¶8 (emphasis added).

[50] Case law and black letter law instruct that a nuisance itself is not a type of liability-forming conduct and that immunity is granted for certain acts, notwithstanding their results. City of Milwaukee, 277 Wis. 2d 635, ¶59 n.17 ("Wis. Stat. § 893.80(4) does not immunize municipalities for certain results; rather, immunity is provided for certain acts.").

25

II

¶185 The second erratum is a continuation of the majority opinion's bait-and-switch approach to City of Milwaukee and precedent. After promising to adhere to City of Milwaukee, the majority opinion contravenes City of Milwaukee by reviving and reinvigorating cases that City of Milwaukee significantly pulled back.

¶186 The majority opinion repeatedly asserts (sometimes in slightly different language) the proposition that "there is no discretion as to maintaining the [sewer system] so as not to cause injury."[51] In doing so, the majority opinion depends in large part for this refrain on cases that have been called into doubt by subsequent case law, especially City of Milwaukee. In City of Milwaukee, this court explicitly cast doubt on case law preceding Holytz and the enactment of Wis. Stat. § 893.80 (Winchell)[52] and on some post-Holytz and post-§ 893.80 cases

---

[51] Majority op., ¶¶4, 60, 95 (quoting Menick, 200 Wis. 2d at 745). See also majority op., ¶¶33, 43 n.25, 51.

[52] Winchell v. City of Waukesha, 110 Wis. 101, 85 N.W. 668 (1901), is cited by the majority opinion at ¶¶4 n.4, 35 n.18, 69, 95 n.38, for the proposition that the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance"; the "authority granted to municipalities . . . to construct sewers, [is] subject to the general legal restrictions resting upon such corporations forbidding invasion of private rights by creation of nuisance or otherwise,"; the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual"; and thus, the municipal entity has an obligation to abate a private nuisance the entity caused, which may include equitable relief.

26

(Costas,[53] Hillcrest,[54] Menick,[55] and Welch[56]).  Thus once again the majority opinion has baited us with a promise to adhere to City of Milwaukee but has audaciously repudiated City of Milwaukee.

_____

[53] Costas v. City of Fond du Lac, 24 Wis. 2d 409, 129 N.W.2d 217 (1964), is cited by the majority opinion at ¶¶31, 33, 35, 41 n.22, 64, 69, 70, for the proposition that a nuisance can exist even though a sewage plant was built and operated in compliance with state plans and regulations; a private individual can bring an action for the injunctive relief of abatement of a private nuisance against a municipal entity; the municipal entity's failure to abate that nuisance caused by the negligent maintenance of the system or structure after it has notice is not a discretionary act that may be entitled to immunity; but "generally the means whereby [a] nuisance is to be abated is left to the direction of the defendant tortfeasor."

[54] Hillcrest Golf & Country Club v. City of Altoona, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986), is cited by the majority opinion at ¶¶4, 63, 64, 95, for the proposition that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)," and the municipal entity's failure to abate that nuisance caused by the negligent maintenance of the system or structure after it has notice is not a discretionary act that may be entitled to immunity.

[55] Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1995), is cited by the majority opinion at ¶¶4, 36, 37, 60, 95, for the proposition that a municipal entity does not enjoy immunity from an action for negligent creation of a private nuisance; and "there is no discretion as to maintaining [a sewer] system so as not to cause injury to residents."

[56] Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, is cited by the majority opinion at ¶¶4, 34, 37 & n.20, 95, for the proposition that there is a longstanding rule that generally municipal entities are not shielded from liability for maintaining a private nuisance; and "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance."  Ultimately though, the court of appeals concluded that the City's maintenance of its storm sewer was not a private nuisance.

27

¶187 The majority opinion repeatedly refers to <u>Winchell v. City of Waukesha</u>, 110 Wis. 101, 85 N.W. 668 (1901). Majority op., ¶¶4 n.4, 35 n.18, 69, 95 n.38. This court decided <u>Winchell</u> in 1901, more than 60 years before <u>Holytz</u> and the enactment of Wis. Stat. § 893.80 and before the extensive subsequent case law interpreting the statute. Not surprisingly then, <u>Winchell</u> has been called into question repeatedly since 1963 as to its persuasiveness and precedential value in a post-<u>Holytz</u>, post-Wis. Stat. § 893.80 world.[57]

¶188 Even <u>Holytz</u> itself called into question all of the case law that came before it and gave credence to the idea that any court decision published before June 5, 1962, relating to government immunity is suspect.[58] <u>Holytz</u> aimed to change the law that was in the court's view "knee-deep in legal esoterica: <u>e.g.</u>, governmental function v. proprietary function; relationship of governor to governed," and had "resulted in some highly artificial judicial distinctions."[59]

¶189 Although the majority opinion relies on <u>Winchell</u>, it spends even more time and space on <u>Costas v. City of Fond du Lac</u>, 24 Wis. 2d 409, 129 N.W.2d 217 (1964). Majority op., ¶¶31,

---

[57] <u>See, e.g.</u>, <u>City of Milwaukee</u>, 277 Wis. 2d 635, ¶¶51-53 n.12, 14. The court of appeals in <u>City of Milwaukee</u> relied on <u>Winchell</u>. The supreme court then characterized <u>Winchell</u> as a case based on obsolete logic.

[58] Also see pre-<u>Holytz</u> cases cited in the concurrence at ¶16 n.11 (citing <u>Christian v. City of New London</u>, 234 Wis. 123, 129, 290 N.W. 621 (1940); <u>Mitchell Realty Co. v. City of West Allis</u>, 184 Wis. 352, 363, 199 N.W. 390 (1924)).

[59] <u>Holytz</u>, 17 Wis. 2d at 30.

28

33, 35, 41 n.21, 64, 70. Even though Costas was decided in 1964——post-Holytz and post-§ 893.80——the Costas court based its holding on Winchell and did not mention either Holytz or Wis. Stat. § 893.80.[60] Indeed, Costas does not even mention the phrase or notion of government immunity.

¶190 Costas relied heavily on Winchell and overturned an observation made in Hasslinger v. Village of Hartland, 234 Wis. 201, 207, 290 N.W. 647 (1940), that if the sewage treatment plant was built according to government specification and was operating according to specification, the plant was not a nuisance in its creation or operation.[61] The Costas court disavowed this observation.

¶191 With regard to Costas, City of Milwaukee noted that "the holdings in Allstate Ins. Co. v. Metropolitan Sewerage Commission, 80 Wis. 2d 10, 15, 258 N.W.2d 148 (1977), and Lange v. Town of Norway, 77 Wis. 2d 313, 318, 321, 253 N.W.2d 240 (1977), effectively overruled, sub silencio," the language in Costas that a city has no immunity for the "plan adopted" for a public works system.[62] Costas has limited shelf-life and relevancy for the present case.

¶192 The majority opinion then discusses Hillcrest, Menick, and Welch. These cases are not good law standing for the proposition for which the majority opinion cites them, namely

---

[60] City of Milwaukee, 277 Wis. 2d 635, ¶55 n.14.

[61] See Hillcrest, 135 Wis. 2d at 440-41 (similarly interpreting Costas).

[62] City of Milwaukee, 277 Wis. 2d 635, ¶¶55 n.14, 58 n.15.

29

that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)."[63]

¶193 The majority opinion cites Hillcrest, the first in the series of storm sewer decisions by the court of appeals, to support its view that municipal entities are not shielded from liability for maintaining a private nuisance. The allegation was that the system discharged water that damaged the complainant's land. Citing and quoting Winchell and Costas, the court of appeals concluded that "[t]he creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)."[64]

¶194 In another sewer case, Menick, the sewer system flooded the complainant's basement. Relying on Hillcrest, the Menick court concluded that "[t]he actions of the City in operating and maintaining the sewer system do not fall within the immunity provision of § 893.80."[65]

¶195 The majority opinion then cites Welch, another overflowing sewer case. The majority opinion cites Welch as supporting the following: "This duty to abate arises from the longstanding rule that generally municipal entities are not shielded from liability for maintaining a private nuisance." Majority op., ¶34. In contrast, the court of appeals stated in

---

[63] Majority op., ¶¶4, 63, 95 (quoting Hillcrest, 135 Wis. 2d at 439-40).

[64] Hillcrest, 135 Wis. 2d at 439-40.

[65] Menick, 200 Wis. 2d at 745.

30

Welch that there was no private nuisance in that case (as the majority opinion admits in footnote 20); that the city was not liable because the evidence was that the sewer system was in working order, functioning as planned; and that the municipal government was immune for the discretionary act of poor design.[66]

¶196 The court of appeals further explained in Welch that the verb "maintain" means "to keep in a state of repair."[67] There, as here, "it is undisputed" that the sewer system was working as designed. Thus, according to Welch, "there was no required pipe 'maintenance.'"[68]

¶197 Hillcrest, Menick, and Welch comprise a set of court of appeals decisions based on Winchell, Costas, and each other. The majority opinion ignores the fact that City of Milwaukee and other cases rendered these cases ineffectual.[69]

¶198 Although language isolated from the full opinions in Winchell, Hillcrest, Menick, and Welch can be made to support the majority opinion, these cases do not buttress the majority opinion's stance. The language and the cases are suspect.

¶199 In City of Milwaukee, Justice Wilcox, writing for the six-person majority, called into doubt the validity of the explanations for government immunity or liability in the

---

[66] Welch, 265 Wis. 2d 688, ¶¶12, 13, 25-27 (citing Anhalt, 249 Wis. 2d 62, ¶12 (quoting Allstate, 80 Wis. 2d at 15-16)).

[67] This court adopted a similar definition of "maintenance" in Hocking, 326 Wis. 2d 155, ¶48.

[68] Welch, 265 Wis. 2d 688, ¶25.

[69] See, e.g., Butler, 282 Wis. 2d 776, ¶41.

31

majority opinion's favorite court of appeals decisions as follows:

> Several court of appeals decisions . . . have applied the immunity statute to a variety of nuisance claims involving sanitary and storm sewers and have utilized conflicting rationales to reach results that are not entirely consistent. See, e.g., <u>Welch v. City of Appleton</u>, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511; <u>Anhalt v. Cities and Vills. Mut. Ins. Co.</u>, 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422; <u>Menick v. City of Menasha</u>, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1996); <u>Hillcrest Golf & Country Club v. City of Altoona</u>, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986)[hereinafter <u>Hillcrest</u>].
>
> To the extent these decisions have created confusion in the area of municipal immunity for nuisances, such confusion is a result of three factors. First, some decisions have continued to rely on immunity jurisprudence that predated <u>Holytz</u> and § 893.80(4). <u>See, e.g.</u>, <u>Hillcrest</u>, 135 Wis. 2d at 438-41, 400 N.W.2d 493. Second, some decisions employ separate analyses for negligence and nuisances grounded in negligence. <u>See, e.g.</u>, <u>Welch</u>, 265 Wis. 2d 688, ¶¶8-13, 666 N.W.2d 511. Third, some decisions fail to stress that a municipality is liable for its negligent acts only if those acts are performed pursuant to a ministerial duty. <u>See, e.g.</u>, <u>Anhalt</u>, 249 Wis. 2d 62, ¶26, 637 N.W.2d 422.
>
> **Focusing the immunity analysis on the character of the tortious acts underlying the nuisance is important for two reasons. First, as discussed supra, liability for nuisance is itself dependent upon whether the underlying tortious conduct is actionable. Second, and more importantly, Wis. Stat. § 893.80(4) does not immunize municipalities for certain <u>results</u>; rather, immunity is provided for certain <u>acts</u>.**

<u>City of Milwaukee</u>, 277 Wis. 2d 635, ¶59 n.17.[70]

---

[70] <u>See also</u> <u>City of Milwaukee</u>, 277 Wis. 2d 635, ¶¶50-62.

In <u>Butler v. Advanced Drainage Systems, Inc.</u>, 2005 WI App 108, ¶41, 282 Wis. 2d 776, 698 N.W.2d 117, which the majority opinion ignores, the court of appeals recognized this court's abrogation of <u>Welch</u> and similar cases, explaining:

¶200 Although City of Milwaukee casts a significant shadow on these cases as "utiliz[ing] conflicting rationales to reach results that are not entirely consistent,"[71] the majority opinion reinstates, reinvigorates, and perpetuates these incompatible opinions.

¶201 The majority opinion points to no authority aside from the out-of-context language in this small subset of court of appeals decisions that appears to state that a municipal entity has a general ministerial duty to operate and maintain a sewer system in a safe condition for neighboring property owners.

¶202 Indeed, the majority opinion at ¶41 n.21 dismisses a more recent 2001 court of appeals storm sewer case, Anhalt v. Cities & Villages Mutual Insurance Co.,[72] that is on point here

_____

Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, and Anhalt v. Cities and Vills. Mut. Ins. Co., 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422 were among those [cases] expressly noted by the [supreme] court in Milwaukee Metro. Sewerage as applying the immunity statute (because all involved municipalities) "utilizing conflicting rationales to reach results that are not entirely consistent." 277 Wis. 2d 635, ¶59 n.17, 691 N.W.2d 658. Welch, the court observed, erred in employing a separate analysis for negligence and nuisances grounded in negligence, and Anhalt "fail[ed] to stress that a municipality is liable for its negligent acts only if those acts are performed pursuant to a ministerial duty." Id. To the extent that either Welch or Anhalt support the proposition that a nuisance claim need not be grounded either in intentional conduct or in otherwise actionable negligence, they are no longer good law on that point after Milwaukee Metro. Sewerage.

[71] City of Milwaukee, 277 Wis. 2d 635, ¶59 n.17.

[72] Anhalt v. Cities & Vills. Mut. Ins. Co., 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422.

33

and undercuts Winchell, Costas, Hillcrest, Menick, and Welch, the cases the majority opinion highlights. In Anhalt, yet one more sewer system case, residents claimed destruction to their real property from flooding. The thrust of the residents' complaint was that the city negligently designed, planned, and implemented an inadequate sewer system that caused a private nuisance. The court of appeals reviewed Winchell, Hillcrest, and Menick, the "prominent cases that apply the law of nuisance to hold municipalities liable for damages resulting from the operation of sewage systems."[73]

¶203 The court of appeals declared in Anhalt that no authority exists imposing a positive duty on a municipal entity to keep its sewer system current with developing needs or to remedy an untenable situation.[74] Anhalt adheres to Allstate, and holds that "the acts of designing, planning and implementing a sewer system are discretionary acts protected under Wis. Stat. § 893.80(4)."[75] The system in Anhalt was operating in the manner in which it was designed to operate. Even though 46 residential properties were substantially damaged by the City's operation and maintenance of the system according to the design it selected, the court of appeals held that the remedy for the residents "lies in their power to vote rather than in the judicial system."[76]

---

[73] Anhalt, 249 Wis. 2d 62, ¶18.

[74] Id., ¶16.

[75] Id., ¶12 (citing Allstate, 80 Wis. 2d at 15-16).

[76] Anhalt, 249 Wis. 2d 63, ¶16.

34

¶204 Anhalt, a 2001 court of appeals decision, was followed by Welch in 2003, and although the two cases "utilized conflicting rationales," they reached the same conclusion: A municipal entity is immune from suit for injuries arising from the design, planning, and implementation of a sewer system. The older court of appeals decisions that reached a different conclusion, Hillcrest (1986) and Menick (1996), are the basis for the majority opinion, which refuses to make the slightest admission that the most recent decisions directly contradict its holding.

¶205 Eight years ago in City of Milwaukee and shortly before that in Physicians Plus, this court labored to synthesize the case law on negligence, nuisance, and government immunity and liability. Today, the majority opinion ignores that guidance and reinvigorates and propels repudiated precedent to reach a result that neither Wis. Stat. § 893.80 nor our case law presently supports.

III

¶206 I come to the third erratum—the majority opinion's interpretation of the statutory cap on damages in Wis. Stat. § 893.80(3). Even if I agreed with the majority opinion that the District is liable in tort for damages and injunctive relief for the creation and maintenance of the private nuisance in the

---

I agree with City of Milwaukee and Butler, which criticize Anhalt, 249 Wis. 2d 62, ¶26, as failing "to stress that a municipality is liable for its negligent acts only if those acts are performed pursuant to a ministerial duty." City of Milwaukee, 277 Wis. 2d 635, ¶59 n.17; Butler, 282 Wis. 2d 776, ¶41.

35

present case, and I do not, the majority opinion errs in concluding that the statutory cap in Wis. Stat. § 893.80(3) does not limit the expenditures a government entity must make to comply with an order for injunctive relief in a tort action.

¶207 Wisconsin Stat. § 893.80(3) provides in relevant part:

Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any . . . political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000. . . . (emphasis added).

¶208 The majority opinion (at ¶¶54-58) concludes that although the statutory cap on damages, injuries, or death applies to monetary damages in a tort action, the statutory cap does not similarly extend to a court order directing a municipality to abate a nuisance founded on tort for which it is liable.

¶209 The majority opinion reaches its unreasonable and absurd result by not adhering to the basic rules of statutory interpretation.

¶210 The majority opinion's reasoning turns on the words "the amount recoverable by any person" in Wis. Stat. § 893.80(3). It claims to give the phrase an ordinary and reasonable meaning. It does not. The majority opinion concludes that injunctive relief is not an "amount recoverable by any person," without examining the ordinary meaning of these

36

words or the meaning of these words in the context of Wis. Stat. § 893.80(3) and in the context of § 893.80 as a whole.

¶211 The majority opinion fails to acknowledge that insofar as a complainant and a government entity are concerned, in many instances there is no substantial difference between monetary damages awarded to the complaining party so that it can remedy its injury and injunctive relief directing a government entity to remedy the complaining party's injury.[77] In either event, the complainant benefits and gets the relief it sought, and the government entity must expend funds.

¶212 I conclude that the phrase "the amount recoverable by any person for any damages" in its ordinary and reasonable meaning includes monetary damages and equitable, injunctive relief against a municipal entity in any action founded on tort.

¶213 My reading of this phrase is bolstered by the legislative policy underlying Wis. Stat. § 893.80(3), namely to limit the amount of funds expended by a government entity when liable "in any action founded on tort."

---

[77] The word "damages" is used in its ordinary and reasonable meaning in Wis. Stat. § 893.80(3). In cases involving insurance policies in which the insurance company agreed to pay "all sums which the insured shall become legally obligated to pay as damages," the court has rejected an overly restrictive definition of the word "damages," as understood by a reasonable insured. The court rejected the notion that the word "damages" does not encompass the insured's costs of complying with an injunctive decree, recognizing that mandatory injunctive relief may also be compensatory in nature. See Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶¶31-44, 264 Wis. 2d 60, 665 N.W.2d 257.

37

¶214 The justification for limitations on the amount the government expends in any action founded on tort is to protect the public purse while providing some relief for damage caused by government entities acting in a non-immune manner.[78] Wisconsin adopted the concept of government immunity in Hayes v. City of Oshkosh, 33 Wis. 314, 318 (1873), holding: "Individual hardship or loss must sometimes be endured in order that still greater hardship or loss to the public at large or the community may be averted." Although the majority opinion reaffirms the constitutionality and rational basis for such caps,[79] the majority opinion is oblivious to the extreme irony in limiting monetary damages in any action founded on tort to $50,000 for public policy reasons, while requiring government entities to pay as much as it takes to abate a nuisance.[80] The injunctive

---

[78] Willow Creek, 235 Wis. 2d 409, ¶33:

> The concerns over the expenditure of both time and resources apply with equal force to actions seeking injunctive relief as they do to actions for money damages. We recognize, however, that the suits must be based in tort to garner the protection of immunity consistent with the statute.

[79] See majority op., ¶¶78-80, 83; Sambs v. City of Brookfield, 97 Wis. 2d 356, 377, 383, 293 N.W.2d 504 (1980); Stanhope v. Brown County, 90 Wis. 2d 823, 842, 280 N.W.2d 711 (1979).

[80] Other courts have recognized this extreme irony. See, e.g., Andrews v. Chevy Chase Bank, 545 F.3d 570, 575 (7th Cir. 2008) ("'[T]he notion that Congress would limit liability to $500,000 with respect to one remedy while allowing the sky to be the limit with respect to another for the same violation strains credulity.'" (quoting McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 424 (1st Cir. 2007))).

38

relief granted in the present case might cost the District 200 times the statutory damage cap of $50,000.

¶215 As this court explained in Sambs v. City of Brookfield, 97 Wis. 2d 356, 293 N.W.2d 504 (1980), "The legislature's goal after Holytz was to delineate the liability to which governmental units would be exposed as a result of Holytz, to reduce the financial strain, and to enable the governmental units to plan for the risk of such liability."[81]

¶216 The court of appeals got it right:

> The "'notion that [the legislature] would limit liability . . . with respect to one remedy while allowing the sky to be the limit with respect to another for the same violation strains credulity'" (citation omitted).

> From the standpoint of the public treasury, there is little difference in practice between a monetary damage award given to a plaintiff to remedy its harm and an injunction order requiring the defendant to abate the harm.[82]

¶217 We are required to read statutes so that no part is rendered meaningless or superfluous and so that the statute is not rendered unreasonable or absurd. The majority opinion renders the statutory damage cap in the statute meaningless and

---

[81] Sambs, 97 Wis. 2d at 373. For purposes of planning and budgeting for liability and litigation, damages up to $50,000 and unlimited injunctive relief are not interchangeable. See Figgs v. City of Milwaukee, 121 Wis. 2d 44, 52, 357 N.W.2d 548 (1984).

[82] Bostco, 334 Wis. 2d 620, ¶¶131, 133 (citing Andrews v. Chevy Chase Bank, 545 F.3d 570, 575 (7th Cir. 2008)).

39

superfluous, unreasonable, and absurd to a significant extent by granting unlimited injunctive relief.[83]

¶218 For the reasons set forth, I conclude that the Wis. Stat. § 893.80(3) cap applies to injunctive relief in the present case.

IV

¶219 I now turn to the majority opinion's erroneous interpretation of Wis. Stat. § 893.80(3), (4), and (5).

---

[83] The majority opinion cites to Lister v. Board of Regents of the University of Wisconsin System, 72 Wis. 2d 282, 304, 240 N.W.2d 610 (1976) and Scarpaci v. Milwaukee County., 96 Wis. 2d 663, 691, 292 N.W.2d 816 (1980), for the proposition that "the public policy considerations that have prompted courts to grant substantive immunity for monetary damages do not apply with equal force to actions for declaratory or injunctive relief." Majority op., ¶62. These cases are not pertinent to the present case. Both Lister & Scarpaci addressed the liability of individual government officers and enjoined them from acting in the future, unlike the present case in which injunctive relief will require the District to act and to incur expenses in the future. Lister, 72 Wis. 2d at 303.

For comments indicating that provisions and limits in Wis. Stat. § 893.80 apply to injunctive relief, see Willow Creek, 235 Wis. 2d 409, ¶36 (government immunity provisions in Wis. Stat. § 893.80(4) govern suit founded on tort against a town for money damages and injunctive relief; "Although immunity serves as a bar to both money damages and injunctive relief based in tort, municipalities do not benefit from the shield of immunity in actions seeking declaratory relief" (emphasis added)). The majority opinion (¶59 n.32) rewrites Willow Creek to mean that because Wis. Stat. § 893.80(3) allows a declaratory judgment action (an equitable non-monetary remedy), then injunctive relief in a tort suit (also an equitable monetary remedy) is similarly permitted. See also E-Z Roll Off, LLC v. County of Oneida, 2011 WI 71, ¶¶21-24, 28, 335 Wis. 2d 720, 800 N.W.2d 421 (explaining the factors to consider to determine whether certain actions are exempt from notice of claim requirements found in Wis. Stat. § 893.80; court held that a claim for violation of a state antitrust statute, ch. 133, which provides for injunctive relief, is subject to § 893.80(1)).

40

According to the majority opinion, these provisions do not apply to suits for or claims for injunctive relief in actions founded on tort. Majority op., ¶¶59-80. The majority opinion delivers a potpourri of arguments to support its thesis but ignores the text of Wis. Stat. § 893.80(3), which we discussed above; the texts of § 893.80(4) and § 893.80(5); and case law precedent interpreting these provisions.

¶220 Subsection (4) is broadly worded: "[N]or may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions" (emphasis added).[84] Subsection (4) bars "any suit" against any governmental subdivision for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions. Subsection (4) applies to Bostco's lawsuit.

¶221 The Court explained in Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, that the term "any suit" includes injunctive relief based on tort:

---

[84] Wisconsin Stat. § 893.80(4) provides as follows:

No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

41

The "any suit" language contained in the immunity statute, however, does not limit suits to money damages in tort but also encompasses injunctive relief based in tort. This interpretation furthers the policy rationales underlying tort immunity that officials not be "unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability."[85]

¶222 Permitting Bostco to get relief for a negligence claim through the back door by bringing a suit for injunctive relief for a nuisance (based on negligence) "contravenes the government immunity policy of this State set forth in Wis. Stat. § 893.80(4) and consequently would not serve the ends of justice."[86]

¶223 Subsection (5) is also very broadly worded: "[T]he provisions and limitations of this section [893.80] shall be exclusive and shall apply to all claims against . . . a governmental subdivision" (emphasis added).

¶224 Wisconsin Stat. § 893.80(5) reads as follows:

Except as provided in this subsection, the provisions and limitations of this section shall be exclusive and shall apply to all claims against a volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency or against any officer, official, agent or employee thereof for acts done in an official capacity or the course of his or her agency or employment. When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent

---

[85] Willow Creek, 235 Wis. 2d 409, ¶33 (quoting Scarpaci, 96 Wis. 2d at 682 (citing Lister, 72 Wis. 2d at 299)).

[86] Scott, 262 Wis. 2d 127, ¶4; see also id., ¶55 (declaring that permitting damages through the back door of a promissory estoppel claim, an equitable claim, based on the same allegations as a negligence claim contravenes Wis. Stat. § 893.80(4) and does not serve the ends of justice).

42

or employee thereof for injury, damage or death, such statute shall apply and the limitations in sub. (3) shall be inapplicable.

¶225 Two sentences comprise subsection (5). I shall examine each in turn.

¶226 The plain language of the first sentence of Wis. Stat. § 893.80(5) includes the words "exclusive" and "all claims" to explain that the provisions and limitations (including the monetary limitations in subsection (3)) are "exclusive" and apply to "all claims" brought in tort. This very broad, all-inclusive language sets the stage and tone for interpreting this subsection.

¶227 The majority opinion curiously skips over the word "exclusive" and the phrase "shall apply to all claims." Instead the majority opinion reasons that Wis. Stat. § 893.80(3) (indeed all of § 893.80) is silent about equitable relief and therefore, that subsections (3), (4), and (5) do not govern actions in equity founded on tort. Majority op., ¶¶55-59, 61.

¶228 Clearly a request for injunctive relief founded on tort is a claim that fits within the statutory phrase in Wis. Stat. § 893.80(5): "all claims." Indeed, Count II of Bostco's complaint is labeled "Claim" and requests equitable relief. Count II of the complaint alleges the claim of a continuing nuisance (based on negligence) and asserts that abatement by concrete lining or recharge wells is the proper relief.

¶229 Section 893.80 is not silent about injunctive relief in tort claims, as the majority opinion proclaims. Subsection (4) addresses "any suit" and subsection (5) addresses "all claims" against a government entity. The words "any suit,"

43

"exclusive," and "all claims" are all-encompassing. The only reasonable interpretation is that a claim for injunctive relief founded on tort is within the all-inclusive scope of the words "any suit" and "all claims" and that § 893.80 is an "exclusive" provision.

¶230 In pursuing its myth of silence in regard to equitable relief under Wis. Stat. § 893.80, the majority opinion (¶¶57-58, 63) leans on Harkness v. Palmyra-Eagle School District, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990), to support its argument that § 893.80 does not apply to equitable claims. The majority opinion sidesteps the fact, however, that the Harkness decision was clearly and emphatically overruled in DNR v. City of Waukesha, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994).

¶231 Harkness held that subsection (4) of § 893.80 (barring suit for legislative acts of a government entity) does not apply to equitable relief and based this conclusion on two prior cases stating that the notice of claim requirements in Wis. Stat. § 893.80(1) do not apply to equitable claims. Harkness concluded that if subsection (1) does not apply to claims for injunctive relief, then subsection (4) does not apply to injunctive relief. Accordingly, the Harkness court concluded that § 893.80(4) does not bar a teacher's equitable claim for reinstatement to her previous position.

¶232 Reviewing the Harkness precedent in DNR v. City of Waukesha, the Supreme Court stated, "[W]e now hold that sec. 893.80 applies to all causes of action, not just those in tort and not just those for money damages. We therefore

44

overrule . . . <u>Harkness</u> . . . to the extent [it] hold[s] that sec. 893.80(1) applies only to tort claims and claims for money damages."[87]

¶233 Because <u>Harkness</u> based its interpretation of subsection (4) on case law relating to subsection (1), which <u>DNR</u> explicitly overruled, <u>Harkness</u> no longer retains any precedential value regarding subsection (4).

¶234 <u>Johnson v. City of Edgerton</u>, 207 Wis. 2d 343, 558 N.W.2d 653 (Ct. App. 1996), got it right, as explained by <u>Willow Creek</u>. The narrow issue presented in <u>Johnson</u> was whether the complainants were permitted to seek injunctive relief based on their claim of negligence against the city. After reviewing the <u>Harkness</u> and <u>DNR</u> cases, the court of appeals concluded, as limited by <u>Willow Creek</u>, "that the official immunity provisions of § 893.80(4), Stats., . . . are not limited to . . . money-damage actions [founded on tort], but are equally applicable to [tort] actions which . . . seek injunctive relief . . . ."[88]

---

[87] <u>DNR v. City of Waukesha</u>, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), overruled the following language in prior cases: <u>Kaiser v. City of Mauston</u>, 99 Wis. 2d 345, 356, 299 N.W.2d 259 (Ct. App. 1980) ("[t]his statute applies to claims for money damages. It does not apply to a claim for equitable relief"); <u>Harkness v. Palmyra-Eagle School Dist.</u>, 157 Wis. 2d 567, 579, 460 N.W.2d 769 (Ct. App. 1990) ("[w]e have found no authority indicating that it applies to equitable or injunctive relief"); <u>Nicolet v. Village of Fox Point</u>, 177 Wis. 2d 80, 86, 501 N.W.2d 842 (Ct. App. 1993) ("[t]he full legislative history clarifies that sec. 893.80 never was intended to apply to equitable actions").

[88] <u>Johnson v. City of Edgerton</u>, 207 Wis. 2d 343, 352, 558 N.W.2d 653 (Ct. App. 1996). <u>See</u> <u>Willow Creek</u>, 235 Wis. 2d 409, ¶¶33-34 (limiting the <u>Johnson</u> language to tort actions).

¶235 The Harkness case has been relegated to the waste bin of history. The majority opinion's reliance on Harkness is misplaced.

¶236 I now turn to the second sentence of Wis. Stat. § 893.80(5). It tells us how to harmonize the "exclusive" and "all claims" language of § 893.80(5) with other statutes in which the legislature may provide rights or remedies against a government entity for damage, injury, or death. The second sentence of (5) directs that when a claim is based on another statute, the damage limitations of subsection (3) no longer apply.[89]

¶237 The majority opinion seems to assert that Wis. Stat. § 844.01 trumps Wis. Stat. § 893.80, making § 893.80(3) inapplicable in the present case. Majority op., ¶¶768-71.

¶238 Wisconsin Stat. § 844.01 governs a person claiming interference with property who brings an action to redress past or further injury to property. The statute reads as follows:

> Any person owning or claiming an interest in real property may bring an action claiming physical injury to, or interference with, the property or the person's interest therein; the action may be to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief.

¶239 Section 844.17(1) explains that a defendant in a Wis. Stat. § 844.01 suit may be "[a]ny person whose activities have injured or will injure the plaintiff's property or interests" (emphasis added). To define the word "person," the majority opinion turns to Wis. Stat. § 990.01(26). Section 990.01 sets

---

[89] DNR v. City of Waukesha, 184 Wis. 2d at 192.

forth definitions of words to be used in interpreting all statutes "unless such construction would produce a result inconsistent with the manifest intent of the legislature." Section 990.01(26) defines "person." "Person includes all partnerships, associations and <u>bodies politic</u> or corporate" (emphasis added).

¶240 The majority opinion reasons as follows: Chapter 844 contemplates that a body politic, such as the District, may be a defendant in an action brought by an owner of property to redress injury caused by the District's negligent maintenance of a private nuisance and to abate the source of injury. Thus, according to the majority opinion, Wis. Stat. § 893.80 does not apply to injunctions that fall within Chapter 844.

¶241 This reasoning is faulty.

¶242 First, Chapter 844 is a remedial and procedural statute; it does not create liability. Chapter 844 applies only when an owner of real estate has a cause of action under common law or otherwise. Chapter 844 is a codification of <u>remedies</u> involving real estate, <u>not</u> "the creation of new or the revision of old <u>rights or duties</u>" (emphasis added). <u>Shanak v. City of Waupaca</u>, 185 Wis. 2d 568, 597, 518 N.W.2d 310 (Ct. App. 1994). In <u>Menick v. City of Menasha</u>, 200 Wis. 2d 737, 746-47, 547 N.W.2d 778 (Ct. App. 1995), the court of appeals, relying on <u>Shanak</u>, concluded that a complainant could not base her substantive claim for private nuisance against the City of

47

Menasha on § 844.01(1). The substantive basis of the claim must be found elsewhere, wrote the court of appeals in <u>Menick</u>.[90]

¶243 The substantive basis of Bostco's claim is not Wis. Stat. § 844.01, but common law tort and § 893.80 governing a government entity's immunity and liability for tortious conduct.

¶244 Second, the majority opinion is inconsistent when it applies Chapter 844 to authorize injunctive relief free of Wis. Stat. § 893.80, but does not hold that Chapter 844 authorizes monetary damages free of § 893.80.

¶245 Chapter 844 governs both injunctive relief and monetary damages for physical injury to or interference with real property. If the majority opinion is correct that Chapter 844 trumps the cap in Wis. Stat. § 893.80(3) (as well as subsections (4) and (5)), then the majority opinion should hold, but does not, that Chapter 844 trumps the cap on monetary damages awarded to Bostco for the past and future injury to its real property caused by the District.

¶246 Third, in its reliance on Chapter 844, the majority opinion pays no attention to an oft-used rule of statutory interpretation: A specific statute trumps a general statute. Sometimes it is difficult to determine which is the general statute and which is the specific statute. Not here. Chapter 844 is a remedial, procedural statute and is also a general statute governing owners of real property bringing a real property action against any person. Wisconsin Stat. § 893.80 is

---

[90] <u>See also</u> <u>Schultz v. Trascher</u>, 2002 WI App 4, ¶¶24-29, 249 Wis. 2d 722, 640 N.W.2d 130 (Wis. Stat. § 844.01 is a remedial and procedural statute).

a specific, substantive, "exclusive" statute governing the liability and immunity of a government entity named as a defendant.

¶247 When the legislature wants to create a specific statute that trumps Wis. Stat. § 893.80, it knows how to do so. An example of a specific statute that creates government entity tort liability was discussed in Morris v. Juneau County, 219 Wis. 2d 543, 579 N.W.2d 690 (1998).

¶248 In Morris,[91] a statute, then-Wis. Stat. § 81.15 (1991-92), entitled "Damages caused by highway defects; liability of town and county," was specific to highway damages and specific to the liability of the town and county. The statute created a right to recover from a government entity for want of repairs of a highway.[92] Section 81.15 explicitly imposed liability on a

---

[91] Just as the legislature knows how to create liability, it also knows how to nullify liability. The legislature has essentially nullified Morris. The statute imposing liability on government entities for highway defects discussed in Morris, then-Wis. Stat. § 81.15 (1991-92), was renumbered by 2003 Wis. Act 214, and joined with the statute relating to damages and injuries caused by snow and ice accumulation. See Comment, Wis. Stat. Ann. § 893.83 (West 2006).

In 2011, the legislature enacted 2011 Wis. Act 132, which removed language holding government entities liable for highway defects. Now Wis. Stat. § 893.83 (2011-12) addresses only an action to recover damages for injuries sustained by reason of an accumulation of snow or ice that has existed for three weeks or more upon any bridge or highway. See Jessica Vanegeren, Man suffers after odd accident; Fall River resident has little legal recourse after concrete fell from bridge and hit him, Portage Daily Register, Jan. 27, 2013, available at http://www.wiscnews.com/news/local/article_5790d188-690c-11e2-ac15-001a4bcf887a.html (last visited July 5, 2013).

[92] Morris, 219 Wis. 2d at 558.

government entity for certain conduct and limited the amount recoverable; it explicitly applied the procedures under § 893.80.[93]

¶249 This court concluded that Wis. Stat. § 81.15 provided "an exception to the general grant of immunity under Wis. Stat. § 893.80(4)"[94] for legislative acts, noting "that the general immunity given counties under Wis. Stat. § 893.80(4) is not applicable when the conditions of Wis. Stat. § 81.15 are met."[95] Section 81.15, stated the Morris court, is "a specific statute tak[ing] precedence over a general statute."[96]

¶250 Unlike the specific statute in Morris creating government liability for particular acts, Wis. Stat. § 844.01 does not explicitly apply to government entities and does not impose liability on government entities. Chapter 844 simply does not override the substantive rules in Wis. Stat. § 893.80 as the specific provisions of § 81.15 once did.

¶251 In sum, Wis. Stat. § 893.80(3), (4), and (5), as applicable to actions founded on tort, govern "any suit," "all claims," and are "exclusive." The majority opinion's potpourri of arguments does not demonstrate that injunctive relief is excluded in the present case. The broadly worded texts of Wis. Stat. § 893.80(3), (4), and (5) govern a government entity's

---

[93] Id. at 551-57.

[94] Id. at 552.

[95] Id. at 546.

[96] Id. at 552, 557.

50

tortious acts that cause harm and govern claims for injunctive relief for private nuisances founded on tort. "A nuisance is nothing more than a particular type of harm suffered; liability depends upon the existence of underlying tortious acts that cause harm."[97]

V

¶252 The fifth erratum relates to the majority's discussion of——or rather its failure to discuss in any meaningful way——injunctive relief. The majority opinion says that injunctive relief may be ordered in excess of the statutory caps, no dollar limits. The End! The majority opinion offers no analysis or directions to the circuit court about injunctive relief and leaves unanswered numerous questions. Let me offer several comments.

¶253 First: When a court exercises its discretion in granting an equitable remedy, it "should pay particular regard for the <u>public consequences</u> in employing the extraordinary remedy of injunction."[98] "Where an important public interest would be prejudiced, the reasons for denying the injunction may be compelling."[99] An injunction against maintaining a nuisance should not be granted where "the inconveniences and hardships caused outweigh the benefits." <u>McKinnon v. Benedict</u>, 38

---

[97] <u>City of Milwaukee</u>, 277 Wis. 2d 635, ¶25.

[98] <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982) (citing <u>Railroad Comm'n v. Pullman Co.</u>, 312 U.S. 496, 500 (1941)) (emphasis added).

[99] <u>City of Harrisonville v. W.S. Dickey Clay Mfg. Co.</u>, 289 U.S. 334, 338 (1933).

51

Wis. 2d 607, 616-17, 157 N.W.2d 665 (1968) (citing Maitland v. Twin City Aviation Corp., 254 Wis. 541, 549, 37 N.W.2d 74 (1949)).[100]

¶254 The circuit court did not exercise its discretion in the present case by paying particular regard for the public consequences or weighing the inconveniences and hardships to the parties. Without holding a hearing, the circuit court based its ruling on injunctive relief on the grounds that the monetary damages were inadequate and that Bostco was suffering irreparable harm.[101]

¶255 Nor does the majority opinion pay any regard to the public consequences of injunctive relief in the present case or the weighing of hardships and inconveniences.

¶256 Second: Ordinarily, if injunctive relief would cause substantial harm to a defendant, the injunction should be denied

---

[100] In granting an injunction, a court considers the relative hardship likely to result to the defendant if the injunction is granted and to the plaintiff if it is denied. "The appropriateness of injunction against tort finally depends upon a comparative appraisal of all of the factors in the case, balanced against each other, and considered together." 4 Restatement of Torts § 936 cmt b. at 695 (1939).

[101] The circuit court erred in the present case by granting injunctive relief without holding a hearing, taking evidence, or making findings about the merits of the relief proposed. See Hoffmann v. Wis. Elec. Power Co., 2003 WI 64, ¶27, 262 Wis. 2d 264, 664 N.W.2d 55 (An ordering of injunctive relief "must be based on the merits of the [proposed relief] with a record to support that order.").

when monetary damages are available to the complainant.[102] In the present case, the circuit court and the majority opinion conclude that the monetary damages available to Bostco are insufficient in amount. But the legislature has declared that the statutorily allowed amount of damages is sufficient.

¶257 Both the circuit court and the majority opinion defy the legislative determination that the government has rendered itself immune from liability in excess of the statutory amount. As the court held in Sambs, "whatever the monetary limitation on recovery, the amount will seem arbitrary because it is based on imponderables, [but] the legislature, not the court, must select the figure."[103] Stanhope echoes the same point: The "monetary limitation is one which the legislature determines balancing the ideal of equal justice and need for fiscal security."[104]

¶258 The balancing of damages, liability, and immunity with regard to a government entity is for the legislature, not the courts. Unless a constitutional violation exists, the court should respect the legislature's decisions about what amount constitutes adequate monetary relief against a government entity and about the important public policy of protecting the fisc.[105]

---

[102] Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 337-38 (1933); Pure Milk Prods. Co-Op v. Nat'l Farmers Org., 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979) ("To invoke the remedy of injunction the plaintiff must moreover establish that the injury is irreparable, i.e. not adequately compensable in damages."); Kohlbeck v. Reliance Const. Co., Inc., 2002 WI App 142, ¶13, 256 Wis. 2d 235, 647 N.W.2d 277.

[103] Sambs, 97 Wis. 2d at 367.

[104] Stanhope, 90 Wis. 2d at 843.

[105] Stanhope, 90 Wis. 2d at 844:

53

> The mere fact that a judgment for damages is not as adequate relief from the point of view of the plaintiff as an injunction would be is not wholly determinative of the question as to whether an injunction will be given. A judgment for damages merely shifts to the defendant a harm equal to that which the plaintiff has suffered. This is not true in the case of the issuance of an injunction. The harm to the defendant which may follow the granting of an injunction against him may be entirely disproportionate to the benefit resulting to the plaintiff.

5 Restatement of Property § 528 cmt. f at 3188 (1944), cited in part by McKinnon v. Benedict, 38 Wis. 2d 607, 618-19, 157 N.W.2d 665 (1968).

¶259 Third: Although the jury verdict plays a very minor role in the present case in the appellate courts, the jury verdict is instructive on the issue of injunctive relief. In its answer to a special verdict question, the jury concluded that the nuisance could be abated by reasonable means and at a reasonable cost. The jury was not asked what the reasonable means or costs were and was not instructed on this special verdict question.[106] The majority opinion does not reveal whether this jury finding of reasonableness is binding on the circuit court in exercising its discretion in an equity matter.

> Courts are not equipped or empowered to make investigations into the financial resources of various public bodies in Wisconsin; the coverage, policy limits and cost of available liability insurance; or the number of victims of governmental tortfeasors and a profile of the losses they have suffered. Information derived from such investigation must necessarily precede any reasoned evaluation of either a limitation on recovery or a requirement of purchase of insurance.

[106] Majority op., ¶35 n.19. See jury instruction at note 44, supra.

54

¶260 At trial, Bostco's experts testified that abatement could be accomplished by lining the Tunnel or by installing a system of groundwater monitoring and recharge wells. Majority op., ¶16 n.10. The only evidence regarding the cost of abatement was a $10 million estimate proposed by one of Bostco's experts.[107] In contrast, the jury found that Bostco was entitled to $3 million for past damages and $6 million for future damages. Taking into account Bostco's comparative negligence, this $9 million figure was reduced to $6.3 million; the jury found Bostco 30% liable for the damage to the Boston Store building.

¶261 The injunctive relief, which might cost $10 million, appears out of sync with the monetary damages.

¶262 Furthermore, although the majority opinion (¶31) adopts the concept that the law of negligence applies to the nuisance in the present case, it is silent about whether the contributory negligence the jury attributed to Bostco reduces any equitable relief founded on tort and negligence.

¶263 Case law instructs that all the usual rules and defenses to negligence apply to nuisance claims predicated on negligence.[108] One of those defenses is contributory

---

[107] No estimate was offered at trial about the District's costs of installing and maintaining a system of groundwater monitoring and recharge wells to replenish groundwater siphoned into the Deep Tunnel. Majority op., ¶15 n.10.

[108] City of Milwaukee, 277 Wis. 2d 635, ¶¶7, 45. See also Physicians Plus Ins. Corp., 2002 WI 80, ¶¶25, 31, 254 Wis. 2d 77, 646 N.W.2d 777.

55

negligence.[109]   Does Bostco have to pay 30% of the cost of abatement?

¶264 Fourth:   What is a reasonable sum that the District should be required to expend on abatement under these circumstances?   An analysis of the injunctive relief ordered shines light once more on the glaring short-sightedness of the majority opinion.   Its statutory interpretation undermines the purpose of Wis. Stat. § 893.80: to "compensate victims of government tortfeasors while at the same time protecting the public treasury."[110]   Interpreting Wis. Stat. § 893.80 to allow unlimited injunctive relief in the present case circumvents the monetary cap set by Wis. Stat. § 893.80(3) and nullifies the statute's purpose.[111]

¶265 Fifth:   There is a legitimate question about whether and how the majority opinion's order that the District "abate the nuisance" is to be framed and enforced.

¶266 The majority opinion explains at one point that "the means whereby [a] nuisance is to be abated is left to the direction of the defendant tortfeasor."   Majority op., ¶33.

---

[109] Physicians Plus Ins. Corp., 254 Wis. 2d 77, ¶31 (citing Schiro v. Oriental Realty Co., 272 Wis. 537, 547, 76 N.W.2d 355 (1956) ("[C]ontributory negligence is a defense in an action for damages occasioned by a nuisance grounded upon negligence."); McFarlane v. City of Niagara Falls, 160 N.E. 391, 392 (N.Y. 1928) (Chief Judge Cardozo writing that when negligence is the basis of the nuisance, contributory negligence principles apply)).

[110] See Stanhope, 90 Wis. 2d at 842.

[111] See Bostco, 334 Wis. 2d 620, ¶130.

56

Nevertheless, the majority opinion sends the issue back to the circuit court to establish the method of abatement.

¶267 Courts, however, "traditionally have been reluctant to enjoin as a public nuisance activities which have been considered and specifically authorized by the government."[112] The same principle should apply to a private nuisance. Moreover, the United States Supreme Court recently commented on the relative competence of courts and agencies to solve technical problems as follows: An "expert agency is surely better equipped to do the job than individual [trial] judges issuing ad hoc, case-by-case injunctions." Am. Elec. Power Co. v. Connecticut, 131 S. Ct. 2527, 2539 (2011).[113]

¶268 The Deep Tunnel is a municipal improvement project that is regulated by an agency with expertise——the DNR——pursuant to state and federal law. The DNR is not a party in the present case, but the District submitted two affidavits from DNR employees to the circuit court. According to the affidavits, any changes to the Tunnel must be undertaken in compliance with DNR regulations, the Federal Clean Water Act, and other applicable law. The affidavits indicate that the DNR had no

---

[112] North Carolina ex rel. Cooper v. TVA, 615 F.3d 291, 309 (4th Cir. 2010) (citing New England Legal Found. v. Costle, 666 F.2d 30, 33 (2d Cir. 1981)).

[113] The United States Court of Appeals for the Seventh Circuit recently made a similar comment: "Environmental problems require the balancing of many complicated interests, and agencies are better suited [than judges] to weigh competing proposals and select among solutions." Michigan v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 797 (7th Cir. 2011).

57

intention of approving the concrete lining that Bostco and the circuit court sought.

¶269 Abatement may also require a study of the environmental impact, costs, and benefits of both concrete lining and alternatives to lining, and other matters regulated by state and federal law.

¶270 The ultimate unanswered question is whether this court, or the circuit court, or the DNR, an independent agency that is not a party to this action, governs abatement.

¶271 The injunction remedy adopted by the majority opinion leaves more questions than answers. Litigation may abound.

VI

¶272 The final erratum: The majority opinion imposes an unfunded mandate on government entities and is contrary to legislative policy. The legitimate legislative concerns of protecting the fisc, ensuring funds are available to pay for essential services, and keeping property taxes at reasonable rates are undermined by the majority opinion.

¶273 By means of this majority opinion, the court imposes an unfunded mandate. Government entities will now be subject to unlimited liability in the form of injunctive relief in cases founded on tort, and may not have the concurrent ability to raise additional taxes or request additional funds from the legislature to pay for the liability the court imposes.

¶274 Government entities are struggling to fund essential services without overburdening the tax base. State aid to government subdivisions has been reduced. The legislature has

58

constrained the ability of government entities to raise funds by imposing levy limits.

¶275 Without question, the majority opinion expands government liability and increases expenses for government entities and taxpayers. This expansion of government liability, this increase in the expenditures of government entities, and this increase in costs to taxpayers are contrary to recent legislative expressions of state policy: One, reduce government liability, and two, reduce recovery for tort victims.

¶276 The legislature has always been less zealous in abrogating government immunity than the courts.[114] The majority opinion repeats the oft-quoted, poorly understood line from Holytz that says "the rule is liability——the exception is immunity." Majority op., ¶50. The legislature never codified the mantra that "the rule is liability." The 1963 statute the legislature enacted in response to Holytz does not direct that "the rule is liability——the exception is immunity." Rather, the legislature rendered government entities immune for broadly enumerated acts. And the legislature severely limited the dollar amounts for which a government entity would be liable.

¶277 Of late, the legislature has been decreasing and eliminating tort liability for government entities and

---

[114] "[J]udicial abrogation of common law immunity did not bind the legislature." Sambs, 97 Wis. 2d at 372.

59

decreasing the recovery of tort victims.[115]  The majority opinion is marching in the opposite direction from the legislature.

\* \* \* \*

¶278 This court attempted to synthesize the law on negligence, nuisance, liability, and immunity in <u>City of Milwaukee</u>.  The majority opinion retreats from <u>City of Milwaukee</u> and confuses the law instead of developing the law in a clear manner.

¶279 Because of the numerous errata in the majority opinion (many of which I do not enumerate), I dissent.

¶280 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[115] <u>See, e.g.</u>, 2011 Act 132 (removing statutory language holding government entities liable for highway defects); 2011 Act 2 (<u>e.g.</u>, restricting recovery for products liability and placing caps on punitive damages and noneconomic health care damages).